## JOHNS–MANVILLE CORPORATION v. LUDOWICI–CELADON CO.

### No. 7292.

Circuit Court of Appeals, Seventh Circuit.

Jan. 7, 1941.

Ira J. Wilson, of Chicago, Ill., for appellant.

Lester B. Mann, of Chicago, Ill., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a decree in a patent suit entered in the District Court February 5, 1940. The patents and claims involved are, Claim 5 of Patent 1,948,395, an apparatus patent, filed January 16, 1928, and issued February 20, 1934; Claims 7 and 8 of Reissue Patent 19,627 (reissue of 1,-899,056) a method patent, filed February 27, 1935, and issued June 25, 1935; Claims 1 and 7 of Patent 1,928,264, a product patent, filed January 16, 1928, and issued September 26, 1933; and Claims 1, 3, 5, 6 and 7 of Patent 2,055,446, a product patent, filed October 10, 1933, and issued September 22, 1936. These patents were issued to Edward R. Powell and are now owned by plaintiff. All of the claims were held valid and infringed except Claim 7 of the last described patent, which was held valid but not infringed.

The contested issues here, as in the court below, are validity and infringement.

The first three named patents, defining an apparatus, a method and a product, have much in common, and will be considered together as they have been by counsel in their briefs.

The general nature of the subject matter of these patents is described in plaintiff's brief as follows:

"These patents relate to an improved mineral wool batt for insulating purposes, and the process and apparatus for manufacturing the same. In manufacturing, the batt, rock or slag is melted in a cupola and the material is continuously withdrawn in the form of a molten stream. Superheated steam under relatively high pressure is discharged through a nozzle so positioned that the steam jet strikes the molten stream and projects it as minute droplets which travel at high velocity into the blow chamber or settling chamber. During their travel and before they solidify they are in part drawn out as very fine filaments or fibers which are temporarily spaced from each other in suspension in the steam, and in the air which is drawn into the settling chamber by the injector action of the steam jet.

"A binder material which is solid at ordinary temperature is delivered in liquid form (either in solution or in melted condition) at a point in proximity to that at which the steam jet strikes the molten stream, and the binder material, in a state of very fine subdivision, enters the settling chamber along with the mineral wool fibers, the steam and the induced air current. The binder material while in this fine state of subdivision collects on the fibers after they are formed and while they are in aeriform suspension. The fibers individually or in flocks, and bearing the binder material, settle to the bottom of the chamber, while the steam and air carrying most of the solvent for the binder pass out through an exhaust port at the top of the chamber.

"Extending along the bottom of the settling chamber, and traveling in the same general direction as that in which the blast of fibers and binder enters the chamber, is a flat surface conveyor in the general form of a belt, on which the fibers, carrying the binder, settle from the aeriform suspension. The conveyor is operated at a relatively slow speed, which is such that at the time any particular portion of the conveyor leaves the end of the chamber it will have had accumulated thereon binder-bearing-fiber to the required thickness, and in accordance with the thickness and density of the batt which is to be produced. The conveyor upon leaving the chamber passes beneath a roller which is adjustable in height, and is spaced from the conveyor to a distance determined by the desired thickness and density of the batt. This roller gently and progressively rolls down and decreases the thickness of the mat on the conveyor, and insures a uniform thickness regardless of any possible lack of uniformity of the depth of the accumulated mass of fibers on the conveyor.

"After leaving the settling chamber the layer progressively cools and is cut into batts of the desired width and length. The batts may then be directly packed into cartons, or further cooled or otherwise treated before packing, as may be desired.

"The final product is a batt of very low density, which may be only a few pounds per cubic foot. It is readily handleable as a unit, and is composed primarily of the mineral wool fibers connected to a sufficient extent by a small amount of binder which serves not only to hold the fibers together so that they are not readily separated and do not fall apart during handling, but at the same time holds the fibers apart as a sort of skeleton to form an extremely open and light porous body with a uniform distribution of dead air cells, and prevents the fibers from slipping on each other and settling or matting down or being readily compressed to a dense mass after the binding material has once hardened.

"The mass of fibers united by the binder constitutes a felted mineral wool product which is of predetermined dimensions, flexible, self-sustaining and form-retaining, and which is of very great economic value and commercial usefulness as a cheap, highly efficient, easily applied, uniform insulating material.

"Such a batt was broadly new in this industry, and Defendant has failed to show wherein anyone had ever succeeded in making or even attempted to make such a product prior to Powell's original filing date. The production of this new article of manufacture is the result of an equally broadly new process, which involves as its main novel and important step the bringing together of the binder material and the hot mineral wool fibers while both are in aeriform suspension, so that they settle down together and the binder solidifies to hold and space the fibers.

"The apparatus is likewise broadly new in that no one had ever proposed the combination of suitable apparatus parts for delivering the binder to the blow chamber along with the hot mineral wool fibers, for collecting the fibers and binder and conveying them as a mat from the blow chamber,

and for compacting them to the required density and uniform thickness as they leave the chamber."

Defendant does not dispute the advantage or success of plaintiff's commercial product, but in connection with its contention of invalidity and non-infringement, points out that plaintiff's commercial product is not manufactured in conformity with the principles taught either in the apparatus, method, or product claims in suit.

### Powell Apparatus Patent 1,948,395.

This patent is entitled "Apparatus for Producing Rock Wool Products." Figure 1, illustrative of the patent device, follows:

jet 34 to be projected with the jet 31." It is further stated: "From the conveyor the material is preferably fed to a cutting plate 67 and cut into suitable lengths by shears 69 or other means. Before the plate 67 is reached the sheet of wool is further impregnated with binder material issuing in jets 71, 73. The binders described herein may comprise such substances as asphalt, sodium silicate, casein, glue, wax or similar materials."

Claim 5 (the one in suit) is as follows: "In a machine of the class described the combination with a settling chamber, of means for forming mineral wool fibres and projecting them into said chamber, a con-

No. 1,948,395

This figure discloses a blow room 35, into which the mineral wool fibers, formed by projecting a blast of steam from the nozzle 33 across a stream of molten mineral 11, are blown. The fibers are collected at the bottom of the chamber upon a continuous moving conveyor 48, where they are successfully compacted by a plurality of rollers 53 within the chamber, and a roller 57, outside the chamber. The rollers are set at successively higher elevations so that the fiber sheet, when delivered, is composed of superimposed compressed strata. The specification states: "For purposes of improving the final product, under certain circumstances, a binder material is introduced into the nozzle 33 by means of a secondary

veyor arranged to receive the fibres as they fall in the chamber to form a layer, means for treating the fibres with a binder, and means to compact the layer of fibres during the advance of the latter to form a bat."

Defendant contends that the only element of this claim which is not completely anticipated by Woolbestos prior use is "means for treating the fibers with a binder," and that this means is old in the art. In support of this contention, defendant relies upon the Woolbestos prior use, Weiss Patent 1,336,403, and Jackson (British) 12,179, not cited in the patent office; Fay 1,242,537 and Parkinson 945,583.

We think it is of some significance to note that of the nine claims of this patent,

the one in suit is the only one which makes any claim to the "means for treating fibers with a binder" and that this claim was inserted by amendment June 24, 1933, more than five years after the patent was applied for and subsequent to the time of its final allowance. It may or may not be pertinent to also point out that of the numerous claims in suit, all were withdrawn except Claim 5 after the taking of depositions relative to the Woolbestos prior use. We do not understand that plaintiff seriously contends but that all the elements of this claim are old except the "means for treating the fibers with a binder." It is therefore evident that this claim must stand or fall upon this feature of alleged novelty.

The Woolbestos apparatus was installed and used more than two years prior to the filing of the application for the patent now under consideration. There is no occasion to relate the proof concerning this prior use as there appears to be no attack upon its sufficiency. The use consisted of the commercial production of mineral wool during 1924. As operated, a stream of molten material flowed from a furnace, was disintegrated by a jet from a blow nozzle into mineral wool fibers which were delivered through a tube into a blow room. Here they were deposited in mat form upon an endless conveyor on which they were advanced to a table beneath a compressing or compacting roller. A means was employed for applying paper to the top and bottom faces of the compressed blanket of fibers and also a sewing machine, by which the blanket of fibers and the paper sheets could be quilted together. This latter means, however, was optional and the proof discloses the manufacture and sale of mineral wool in blanket form not covered with paper and not sewed. Thus, there is found in this prior use, as in the instant patent, a machine with a settling chamber, blow nozzle, traveling conveyor and a compacting roller. The only element of the claim in suit not disclosed by this prior use is the binder means.

It therefore becomes of controlling importance to determine if such means were known to the art.

Fay patent is entitled "Art of Making Mineral Wool" and discloses an apparatus for the making of mineral wool fibers similar to that of Powell. It discloses a receptacle from which hydrocarbon oil is delivered into the stream line, where it comingles with the steam and is discharged into the settling chamber for the purpose of treating the fibers.

Parkinson illustrates means for forming mineral wool fibers and treating them with a liquid of crude hydrocarbon oil, which is delivered from a tank through a pipe on to the fibers as they are projected by an air or steam blast from the stream of molten slag flowing from what is designated as a cupola. The amount of the oil distributed over the stream of fibers is controlled by a valve in the delivery pipe.

Jackson illustrates a means of treating asbestos fibers which are blown into a chamber "together with a spray of varnish or suitable cementing material" such as "copal varnish," or "boiled linseed oil."

Weiss also deals with the treatment of insulating materials such as animal, vegetable and mineral fibers. The fibers are delivered into the upper portion of a chamber equipped with sprayers which "serve to discharge the adhesive either directly upon the fibers deposited upon the conveyor or outwardly in the form of a spray or mist through which the fibers fall." The adhesive suggested by him for the treatment of such fibers are sodium silicate, water resistant glue, or a solution of cold tar pitch or asphalt pitch.

It must not be overlooked that this is an apparatus and not a process or method claim. The District Court, in discussing this claim, said: "The only products that would be produced by the addition of Fay to Woolbestos would be the same stitched paper product as is now made by Coast Insulating Company, a successor to Woolbestos, except that the wool would have its dust retained. * * *"

In our opinion this conclusion is beside the issue for the reason that neither the material supplied by the means illustrated or described, nor the ultimate product, is any part of the apparatus or elements of the claim. It seems to us plaintiff's contention as to validity is predicated largely upon the premise apparently subscribed to by the Trial Court that the use of the apparatus disclosed resulted in an improved product. It stresses the character of the fiber treating material utilized in its process of manufacture. That argument may more appropriately be made in behalf of the process claims hereinafter considered—in fact, it is so made, but we do not understand that the validity of an apparatus patent is to be determined merely by the character of process which it is

capable of performing, or by the product resulting therefrom. Concrete Appliances Co. v. Gomery, 269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222.

Powell's accomplishment consisted of utilizing the fiber treating means, long familiar to the art, in connection with the Woolbestos prior use apparatus. Plaintiff's witness, Coss, in referring to the binder means, testified as follows: "Q. But combining Fay and Woolbestos gives you the apparatus for putting it in? A. It certainly does."

█ It is our view that this combination did not amount to invention. General Machinery Corp. v. Clearing Mach. Corp., 7 Cir., 104 F.2d 553; Benjamin Electric Mfg. Co. v. Bright Light Reflector Co., 7 Cir., 111 F.2d 880. This brings us to a consideration of the closely allied method claims in suit.

#### Powell Reissue Patent 19,627.

Claims 7 and 8 of this reissue patent define a process to be employed in connection with the apparatus disclosed in patent 1,948,395. The element of these claims, asserted to be invention over the prior art, is the binder employed in the process and the result produced thereby. The process is described by plaintiff in its brief, thus: "The Powell process is a single continuous one so that the final product goes directly to the cartons after coming from the cutting mechanism to which the material is directly and automatically conducted from the blow chamber outlet. No hand labor is required between the raw material inlet to the blow chamber and the cartoning of the final product. The result is an extremely uniform product continuously and automatically produced."

This appraisement of Powell's process and product evidently embraces plaintiff's commercial product as it is an overstatement of the process described and the product resulting therefrom. At this point, therefore, we think it is pertinent to make some observations concerning plaintiff's commercial insulating bat and the process here disclosed. Such observations are also pertinent to all the patents involved in this suit. An inspection of the exhibits before us exemplifying the various improvements in this art, as well as the testimony, leaves no room for doubt but that plaintiff has achieved a remarkable success with its commercial product. For instance, a comparison of its commercial insulating bat with previous wool insulating products manufactured by it, as well as others, is in itself, persuasive that plaintiff made great progress in the art—in fact, that its improvement was such as to suggest that Powell's alleged inventions were meritorious. A study of the findings as made by the court below is also convincing that great weight was attached to the present commercial product. A study of the record, however, leaves us in serious doubt as to how much, if any, of the success which plaintiff has attained by its commercial product is due to either the process, apparatus, or product as taught by Powell. So far as we are able to discern from the record, the first lightweight home insulation bat was placed upon the market by General Insulating and Manufacturing Company of Alexandria, Indiana, a competitor of plaintiff. This bat was 15 inches in width, 18 inches in length and 4 inches in thickness. It was homogeneous and sufficiently rigid to handle. A chemical analysis disclosed a 2 per cent binder which contained approximately 20 per cent rosin. It was three years later before plaintiff commenced the manufacture and sale of its so-called single ply homogeneous or non-wrapped product, and it is this product with which it has attained commercial success. Thus, it was some eight years after Powell's first application before plaintiff commenced the manufacture of a product, which it is now claimed was disclosed by Powell's inventions.

It is asserted by the defendant that the apparatus disclosed by Powell was not capable of utilizing the process and method disclosed so as to produce the present insulating bat. Whether this assertion be justified or not, the fact is, that before plaintiff commenced the manufacture of the present day bat in 1935, it was required to remodel its apparatus then in use at an expense of $8,000 per unit in order to manufacture a product which its competitors had placed upon the market and which received wide acclaim from the public. Plaintiff explains its delay in this respect by asserting that the period was one of depression and that it was not able to obtain the necessary appropriation from headquarters in order to remodel its apparatus. Even though this rather feeble explanation be credited, the fact remains its equipment was not capable of producing the product now relied upon.

In the meantime, plaintiff, in 1929, commenced the manufacture of an insulation pad under the apparatus and method of the

204

Powell patents. The rock wool in this pad was held in place by sheets of asbestos paper. It has little, if any, resemblance to the insulating bat so much stressed in this case. Plaintiff entered the home insulation field in 1930 with loose rock wool packed in a paper bag. Two years later, it commenced the manufacture of a home insulation material of a thickness of one inch. The material was wrapped around a piece of cardboard to make a multiple bat three inches thick. In order to be thus wrapped the felt was required to be limp and flexible as distinguished from the relatively rigid self-sustaining material of the present day home insulation bat, which is not suitable to be wrapped around a solid material. The manufacture of this wrap-around bat was continued by plaintiff until the year 1935 when the apparatus was installed to produce the present home insulation bat.

Commercial success, under such circumstances, not only fails to support plaintiff's present position, but detracts from the argument that Powell invented either an apparatus, method or product. The situation strongly indicates that plaintiff has followed its competitors rather than the disclosures of the Powell patents. In this connection it is also significant that Claim 5 of Patent 1,948,395, (considered heretofore) as well as the other patents involved in this litigation, were applied for subsequent to the time when plaintiff's competitors were on the market with the insulating bat. We do not hold that this situation alone dispels validity, but we do think it is a persuasive circumstance that the disclosures of Powell constituted little, if any, improvement in the field of home insulating material.

Claim 7 of this reissue patent is as follows: "A process for the manufacture of felted sheets of mineral wool which comprises forming a suspension of mineral wool by disintegrating a molten stream of a suitable mineral material, spraying a binding material into the suspended fibers, depositing successive increments of the suspended fibers and dispersed binding material simultaneously on to a moving surface in the form of a continuous mat, and compacting the mat thus formed into a coherent sheet."

What we have said concerning Claim 5 of the apparatus patent applies largely to this claim. The process disclosed in this claim is almost identical with that disclosed in the Woolbestos prior use with the exception of the element "spraying a binding material into the suspended fibers." The essential element in Claim 5 of the apparatus patent is "means for treating," while here it is the element of "spraying." The former shows the mechanism by which the act may be performed—the latter its performance.

Claim 8 is identical with Claim 7, except that it specifies a "liquid" binding material and states that the compacting of the mat is performed "before hardening of the binder." The only reference in the specifications of this patent to a binder is: "* * * A suitable binder is sodium silicate. Other binders that can be applied in this manner are linseed oil, waxes and asphaltic fluxes."

Fay and Parkinson, discussed heretofore, are again relied upon as anticipating these claims. Both of these patents disclose the spraying of a treating material on mineral wool fibers substantially in the same manner as proposed by Powell. Plaintiff disputes that the spraying material of these patents was a binder. They suggest the spraying of mineral wool fibers with heavy or crude oils, while one of the sprays suggested by Powell is linseed oil. Assuming, however, that the spraying material was not a binder, the fact remains that the method employed was similar, and with that we are now concerned.

Weiss Patent 1,336,403, discloses a binding material such as sodium silicate, asphalt, coal tar pitch and the like upon animal, vegetable and mineral fibers, while Jackson discloses the spraying of a binder such as "varnish" or "boiled linseed oil." In this connection, it is also worthy of note that plaintiff's commercial insulation product manufactured and sold in 1932, purportedly in accordance with the teachings of Powell, used as a binder "starch and black oil." It appears that it would be difficult, if not impossible, for one though skilled in the art, to determine from the disclosure of either of these claims, a binder requisite to obtain the desired result. It would be a matter of experimentation, and any assistance derived from Powell might as readily be obtained from the prior art. Plaintiff's witness Coss testified as follows: "Q. * * * If we blow the fibers into the Woolbestos chamber in accordance with Fay's disclosure and employ instead of oil a binder having more adhesive qualities, would you then in your opinion carry out the Powell process? A. That is it; that is the invention."

We conclude these claims are void.

Powell's Product Patent 1,928,264.

The specifications and drawings of this patent are substantially duplicates of those appearing in Powell Patent 1,948,395, previously discussed. Claims 1 and 7 are in suit. Claim 1 is as follows: "Sheet or block material adapted for use for heat insulation purposes, comprising a compacted mass consisting of accretions of a projected mixture of mineral wool fibers and binding material deposited from a gaseous suspension of said mixture, a predominant amount of said fibers being arranged in the mass so that their lengths extend generally in planes approximately parallel to the faces of the sheet or block."

Claim 7 is similar to 1, except that the parallelism of fibers is omitted and the limitations are imposed that the fibers retain "substantially the same length as at the time of their formation in the blast," and that the binder particles are "uniformly disseminated" throughout the mass.

Defendant contends that these claims are void in view of the prior art, including the prior disclosures of Powell. It is somewhat difficult for us to follow plaintiff's argument as to what is novel in these claims. At one point in its brief, it is stated: "* * * The important novel and distinguishing features of the Powell product are that the fibers are present in substantially the positions in which they lie after floating down from an aeriform suspension and collecting on the slowly moving conveyor. They lie in substantially parallel planes because most of them fall flat and those which happen to land on end fall over to a substantially horizontal position. * * *"

At another point, in attempting to fasten infringement on the defendant, it states:

"Most of Defendant's argument on non-infringement harps back to alleged anticipation based on alleged parallel fibers in Woolbestos. We may assume that the fibers of the Woolbestos paper covered and sewed blanket were parallel to substantially the same extent as those of Powell and Defendant and that they were slightly but no more broken than those of Powell and Defendant.

"The important fact is that Woolbestos did not have the Powell product because it had no binder, and if it had omitted the paper and sewing, its product would not have been handleable or form-retaining, and any parallelism of fibers would have been lost and the fibers would have been broken in packing the loose wool into bags."

It thus appears that reliance is placed upon the binding material element as in the patents discussed heretofore. In other words, as we understand this argument, it is to the effect that the parallelism effect of the fibers was disclosed by the Woolbestos prior use, but because of the failure in that use to disclose a binding material it was necessary to employ a sewing means in order that the product be handleable or form-retaining. So it appears that plaintiff, in support of these claims, as in claims discussed heretofore, places its reliance upon the binding material. On this premise, however, plaintiff is on dangerous ground in view of the file history of this patent. The file wrapper discloses that on August 12, 1933, more than a year after the lightweight homogeneous bat of General Insulating and Manufacturing Company had been placed on the market, an amendment was filed presenting Claim 1 in suit. At the same time, among others, Claim 4 was presented, as follows: "A material adapted for use for heat insulation purposes, comprising a compacted mass consisting of accretions of a projected mixture of mineral wool fibers and binding material deposited from a gaseous suspension of said mixture."

It will be noted this claim did not include the fiber arrangement and was rejected and cancelled for the following reasons:

"Claims 4, 6 and 7 are clearly not allowable over Parkinson as there is no invention in compacting Parkinson's material, especially in view of Elbers 194,422 of record.

"It is clear from the original disclosure herein that the use of a binder was only incidental to applicant's process which is practically entirely concerned with the parallel fiber arrangement.

"He will not now be allowed at this time to elaborate on the functions of the binder which functions are not obvious or if they are obvious then they are shown in prior art."

Claim 1 in suit was then allowed and is the same as the rejected Claim 4, with the addition of the following language: "* * a predominant amount of said fibers being arranged in the mass so that their lengths extend generally in planes approximately parallel to the faces of the sheet or block."

It thus appears obvious that the binding material element of Claim 1, contrary to plaintiff's present position, was regarded by the Examiner as old in the art, and that the claim was allowed solely upon the belief of the Patent Office that there was some-

thing novel in the fiber arrangement. We are therefore of the opinion that the binding material element of this claim furnishes no support to validity. In Computing Scale Company v. Automatic Scale Company, 204 U.S. 609, 617, 27 S.Ct. 307, 310, 51 L.Ed. 645, it is said: "An examination of the history of the appellant's claim, as disclosed in the file wrapper and contents, shows that, in order to get his patent, he was compelled to accept one with a narrower claim than that contained in his original application; and it is well settled that the claim as allowed must be read and interpreted with reference to the rejected claim, and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the Patent Office or disclosed by prior devices. * * *"

See, also, Schriber-Schroth Company v. Cleveland Trust Company et al., 61 S.Ct. 235, 85 L.Ed. ——, decided by the Supreme Court December 9, 1940.

Neither do we think there was any invention in describing the fiber arrangement. Plaintiff assumes "* * * that the fibers of the Woolbestos paper covered and sewed blanket were parallel to substantially the same extent as those of Powell * * *." We think such a situation is inevitable. There is no occasion to again discuss the Woolbestos prior use except to point out that the mineral wool fibers were formed, delivered into a blow room, and deposited on a moving conveyor. Whatever may be said with reference to other parts of the process, this much of it is precisely the same as Powell's. We do not see how patentable distinction could result from the course pursued by the fibers in their descent upon the conveyor. We are of the view that their fall would be determined by the law of gravitation rather than of patents.

What we have said concerning Claim 1 is largely applicable to Claim 7. This latter claim contains the additional element—"the fibers retaining substantially the same length as at the time of their formation in the blast." It is argued by the defendant that this claim is also void for indefiniteness. We think this contention is sound. The proof is undisputed that it is impossible to determine the length of the fibers either as they are formed in the blast or in the finished product. Plaintiff points out that this limitation means the fibers have not been subjected to any handling, shredding or breaking during the course of the operation. The same may be said of Woolbestos. How can the result sought by this limitation be ascertained? We think the answer is that it is the natural result of the process. Again we note that when this patent was applied for, the patentee evidently had no conception of an improved, homogeneous light wool bat. The specification refutes any such thought. In describing the advantages of the invention, it states: "* * * A further one rests in the manner of assembling the cut strips of material into an insulating block, which comprises laying down a strip of wool, then applying a sheet of less porous material such as tar or roofing paper, then a strip of wool material and so on, until a predetermined size of laminated block is formed. This block may be held in assembled position by wire stapling, sewing, gluing or wrapping. * * *"

### Powell Product Patent 2,055,446.

Application for this patent was filed October 10, 1933, and allowed September 22, 1936. Claims 1, 3, 5, 6 and 7 are relied upon. All these claims were held valid by the court below and all infringed except Claim 7, which was held not infringed.

The product defined in this patent is supposed to be an improvement over that produced by use of the apparatus and process in the prior patents of Powell involved in this suit, which we have already found invalid for want of invention, or as anticipated by the prior art. It appears to be the purpose of this patent to provide more specifically the binder to be employed than had been done in other patents of Powell and in the art. The manner of applying the binder is the same or similar to that disclosed in previous patents. Plaintiff praises with greater enthusiasm, if that is possible, the improvement of its product as disclosed by this patent than was bestowed upon each of its former patents. Again we think this praise is more relevant to plaintiff's commercial bat than to the disclosures of its patent. According to the specification, the product of this patent "averages 7 to 9 pounds to the cubic foot," while plaintiff's present home insulation bat weighs 4 pounds to the cubic foot. Plaintiff's commercial bat is 4 inches thick, while the felt produced in accordance with the disclosures of this patent approximates 1 inch in thickness. Its commercial bat is "form-retaining" in that it is sufficiently stiff to retain its form when handled, while

the felt produced in accordance with this patent is "particularly well adapted to being wrapped around a piece of cardboard or the like." Again we are led to believe that plaintiff's commercial bat was not the result of the disclosures found in this patent or in those considered heretofore.

Claim 1, most strongly relied upon, was inserted by amendment in April, 1936, almost three years subsequent to the patent application. Again this was some three years after plaintiff's competitors had placed upon the market an insulating bat. In the meantime, plaintiff's product consisted of a bat composed of thin layers of mineral wool wrapped around a combustible reinforcing cardboard as disclosed in this and other patents in suit. Claim 1, however, apparently was drawn to describe a light-weight, self-sustaining, form-retaining, homogeneous bat developed and popularized by competitors. Claim 1 reads as follows: "An article of manufacture comprising felted mineral wool fibers and a water-insoluble organic binder adhering the fibers into a lightweight unit, the binder including an adhesive solid disposed over the fibers, constituting 0.8 to 8 per cent of the weight of the unit, and serving to maintain resiliently the spacing of the fibers in the unit and to make the unit self-sustaining and coherent, while preserving the incombustibility thereof."

The essential element of this claim, as we understand it, is the limitation that the binder constitutes 0.8 to 8 per cent of the weight of the unit. The specification of this patent refers to Powell's prior Patent 1,-899,056, (re. 19,627) discussed heretofore, as disclosing the method and apparatus for making the product. The apparatus shown in that patent for the purpose of performing the method described discloses a valve as a means of controlling the amount of binder delivered upon the wool fibers in aerisuspension. Parkinson and O'Brien, discussed heretofore, each disclose a valve for a similar purpose. A number of prior art patents are relied upon by the defendant, which it is argued invalidate this claim. Some of them have been discussed in connection with the other patents in suit, and it would serve no useful purpose to endeavor to analyze in detail such prior art. In addition to the prior patents of Powell, there is cited Hall 737,099, which discloses a water insoluble organic binder of 5.75 per cent; Hall 811,778, which suggests a suitable binder of about 8 per cent; Kelly

688,420, which discloses a binder of 5 per cent; and Jackson (British) 12,179 which states: "I use no more of the cementing material than is necessary to hold the fibers together."

While this claim may not be directly anticipated by the prior art, we are of the opinion that in view of such art, the disclosure here made does not amount to invention. It would appear that with a known apparatus for the manufacture of the product described in this patent, and with the numerous binders then in use, a person skilled in the business could readily have determined a binder suitable to obtain the desired result. With the disclosure of this patent, experimentation would still have been in order. If the patentee was able to disclose the amount of binder to be used as from 0.8 to 8 per cent only, how could a person undertaking to utilize this information know what was the proper per cent of binder except by experimentation? Where the disclosure of a patent leaves the alleged invention in the realm of speculation, it is void. In The Incandescent Lamp Patent, (Consolidated Electric Light Co. v. McKeesport Light Co.), 159 U.S. 465, 475, 16 S.Ct. 75, 78, 40 L.Ed. 221, the court said: " * * * And the same rule would prevail where it was apparent that the proportions were stated ambiguously and vaguely; for in such cases it would be evident, on the face of the specification, that no one could use the invention without first ascertaining, by experiment, the exact proportion of the different ingredients required to produce the result intended to be obtained. * * *"

Claims 3, 5, 6 and 7 disclose less that is novel than in Claim 1. As to Claims 3, 5, and 6, plaintiff says: "These claims call for an article of manufacture comprising 'felted mineral wool fibers' held together as a light weight, self-sustaining, water-repellant, incombustible felt, by the action of a binder having two essential ingredients, namely a toughening agent such as rosin, and a plasticizing agent such as a solid petroleum hydrocarbon."

None of these claims limits or defines the amount or proportion of binder to be employed except Claim 5, which states: " * * * binder material being approximately 1 to 5 per cent of the weight of the finished unit." Just why plaintiff emphasizes "felted mineral wool fibers" as the product of these claims, we are unable to discern. This patent specifically relies

upon Patent 1,899,056 (re. 19,627) as disclosing the general method of operation for the making of the product described. That patent, however, is entitled "Process of Making Felted Mineral Fiber," and in numerous places in the specification, reference is made to fibers known as mineral wool bound together in felted form. Again it appears that the essential element is the character of the binder and its effect upon the finished product. It is stressed that the solvent characteristic of the binder employed is of great importance. Plaintiff's witness Coss, however, who had had experience in the manufacture of mineral wool products, concerning the advantage of the so-called solvent, testified:

"I don't think there is much purpose for it (solvent) myself.

"Q. You did not need it in your binder, did you? A. I don't think we needed it. We could have heated it and gotten the same result."

Hall, 737,099 described a "mineral wool felt" consisting of mineral wool "and a suitable binding material mixed with the mineral wool, so as to form a body of material that is homogeneous and more or less compact and substantially inflexible." A product consisting of "felted mineral wool fibers" made by the depositing of mineral wool fibers from an aeriform suspension, was old in the art. We have heretofore referred to a number of such prior art patents and will not repeat.

■ Gelertsen 1,204,149, discloses a binding material 74 to 75 per cent resin and not over 25 per cent paraffin. The composition in liquid form is used as a waterproofing and as a binding medium. De Cew 1,394,610, discloses a rosin product including about 15 per cent paraffin wax. We conclude that the claims of this patent are anticipated by the prior art, including the disclosures made theretofore by Powell, and, in any event, they are invalid for lack of invention.

■ In reaching the conclusion that all the claims in suit are invalid, we are not unmindful of the presumption of validity which attaches to the grant of the patents, as well as the weight to be attached to the findings and conclusions of the District Court, and due consideration has been given accordingly.

The cause is reversed and remanded, with directions to dismiss the complaint.