KNIGHT–MORLEY CORPORATION et al.
v. AJAX MFG. CORPORATION et al.
Civil Action No. 6872.

United States District Court
E. D. Michigan, S. D.
Dec. 23, 1948.

John C. L. Cowen and Harness, Dickey & Pierce, Detroit, Mich., for plaintiffs.

Arthur Raisch and Barnes, Kisselle, Laughlin & Raisch, Detroit, Mich., for defendants.

PICARD, District Judge.

Action by plaintiffs for claimed infringement of a mounting adaptable for holding a rear view mirror on the outside of an automobile. This is an "improvement patent" and plaintiffs not only claim infringement, but allege defendants guilty of unfair competition.

Defendants admit infringement of claim two of the alleged patent but deny they have infringed claim one; deny they have been guilty of unfair competition and principally insist that the structure is not patentable.

The questioned article is designed to fit on automobiles having a decorative molding strip along the side of the car below the windows. These moldings, referred to as "belt" or "trim lines" are usually made of polished, stainless steel or are provided with a bright chromium finish so that a view of the automobile in a normal manner indicates the molding as part of a continuous, unbroken chromium band running along the side of the motor car. This band, however, is really in several sections, one of which is a short piece on the side of the cowl between the hood and the front door. The mirror mounting is in two parts and includes a base portion adapted to be substituted for the short cowl section when removed. To this special base portion is secured a separate mirror supporting arm, which is attached to the base and the base in turn secured inside the automobile. When the support is installed neither the arm nor the base is removable from the car, nor can the parts be separated one from the other unless access can be gained to the interior of the car. Locking the car doors makes the entire mounting and mirror theft proof.

Plaintiffs' invention has many additional advantages over previous mountings, towit: it has all the benefits and results of a one piece molding mirror including theft proof features; it has interchangeable

parts; it is the only two-piece mirror carried by and forming a part of the molding of the car that can be handled and installed like a one-piece mirror, and its cost of manufacture, even in minor quantities, provides an obvious saving.

It is defendants' position that the application file wrapper indicates that the Examiner did not consider nor cite seven different patents which would have undoubtedly influenced him not to allow plaintiffs' claims, had he read them. Chief of these are the

| Archer patent | 1,769,095 and |
| Sarnes patent | 2,226,482 |

### Infringement.

We have compared the construction detailed by plaintiffs' Morley patent 2,212,-033 with defendant Ajax's rear view mirror manufactured and admittedly sold by it after World War II when there was a shortage of almost everything, including rear view mirrors. We find that there is only one part of plaintiffs' patented article that is not covered directly in defendant's construction, to-wit, that "when assembled" its mirror arm and base form "continuous curves." Admittedly defendant's mirror forms a right angle near the base rather than "continuous curves." But that difference is so obviously an attempt to avoid infringement as to emphasize the infringement itself. The difference is immaterial. Without question defendant Ajax appropriated plaintiffs' ideas in the construction of his two-piece mirror and we hold that defendant has infringed not only claim two but claim one.

### Conclusions of Law

Having concluded that defendants' mounting infringes, it is now necessary to determine whether the Morley patent is valid and of course there is a presumption of validity not only raised by the granting of the patent, Radio Corp. of America v. Radio Engineering Laboratories, 1934, 293 U.S. 1, 7, 55 S.Ct. 928, 79 L.Ed. 163; Johns-Manville Corporation v. Ludowici-Celadon Co., 7 Cir., 1941, 117 F.2d 199; Gebhard et al. v. General Motors Sales Corporation et al., 1943, 77 U.S.App.D.C. 331, 135 F.2d 248; Ralph N. Brodie Co. v. Hydraulic Press Mfg. Co., 9 Cir., 1945, 151 F.2d 91, but the fact that defendant copies the device disclosed and claimed in plaintiffs' patent is very strong evidence that it is substantially different from devices of the prior art. Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 440, 441, 31 S.Ct. 444, 55 L.Ed. 527.

To the same effect see Farmers' Handy Wagon Co. v. Beaver Silo & Box Mfg. Co., 7 Cir., 236 F. 731, 738; A. R. Milner Seating Co. v. Yesbera, 6 Cir., 133 F. 916; Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 98 F.2d 999.

Nevertheless defendants contend that when the Morley patent is tested for validity it falls far short of meeting the qualifications courts have laid down in many cases because the Morley patent does not disclose a new combination of old elements; it has not satisfied any long standing want; it has not produced any new and unanswered result; it has not revolutionized the art; it has not attained an old result in a better, more economical and more efficient way, and at most it is only an improvement that would have been quickly apparent to one trained in the art.

At the outset it is well to note that there are other interesting developments in the life of this patent. It has been the subject of one interference proceeding on Sarnes application 359,763 and two law suits in this district.

Here are the facts:

The Monarch Governor Company holds Sarnes' patent 2,226,482, cited by defendants as anticipating the Morley patent in the prior art. Directly after the Morley patent was issued, Monarch instituted interference proceedings before the Patent Office, where it was held that Morley was the true inventor of the two-piece mirror. Monarch then brought civil action 3705 in this district to have this court grant it the prior rights denied by the Patent Office. Adjudication of that suit was also in favor of Morley. While 3705 was pending, a second suit, civil action 2,201, was brought by plaintiff Morley against Monarch for in-

fringement of the Morley patent 2,212,033, but this action was held in abeyance until outcome of the infringement suit. After 3705 was decided in favor of Morley, the infringement case 2,201 was settled and Monarch became a licensee of plaintiff Morley.

So while it is true that patentability of the Morley patent has never been adjudicated, nevertheless that patent is now before this court with the added significance of having been the subject of four years of litigation between rear view mirror manufacturers, Monarch and plaintiff, one of which, Monarch, owns the Sarnes one-piece molding mirror patent licensed to Morley and still wanted to make the two-piece construction covered by the Morley patent so much that it was willing to pay a royalty to get it.

It is also of importance to note that one of the basic reasons for advancing the Sarnes patent as one patent overlooked by the Examiner is the statement on page 2, right hand column, sentence beginning line 60, Sarnes 2,226,482:

"The mirror supporting arm 17 projects outwardly from the base and is firmly attached thereto either integrally, as shown by way of example, *or in any other suitable manner.*" (Emphasis ours)

■ We will partially remove this obstruction from the path of validity immediately because while the Sarnes patent does express a desideratum, it never discloses such construction of a two-piece mounting. It is a general statement of anticipation but Sarnes did not in fact make the Morley mounting nor is there an indication of how the improvement could be achieved anywhere else in the Sarnes patent. Such a general statement of what might be done, unaccompanied by a description of how to accomplish such results, is not sufficient under R.S. 4886, 35 U.S.C.A. § 31. See also United States v. Dubilier Condenser Corp., 289 U.S. 178, 188, 53 S.Ct. 554, 77 L.Ed. 1114, 85 A.L.R. 1488; Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721.

Conversely this point is also touched upon in a very recent case, Hazeltine Research v. General Motors Corporation, 6 Cir., 170 F.2d 6, 9, where Judge Simons held, quoting from Permutit Co. v. Graver Corporation, 284 U.S. 52, 52 S.Ct. 53, 55, 76 L.Ed. 163:

"* * * while drawings may be referred to for illustration and may be used as an aid in interpreting the specification or claim, they are of no avail where there is an entire absence of description of the alleged invention, or a failure to claim it."

So while the Sarnes patent does indicate that the mirror supporting arm which projects outwardly from the base might be attached thereto in some "other suitable manner" than its filed drawings which show an integral attachment, it goes no further. The Sarnes patent only states that it can be done while the Morley patent does it by making the base separate from the arm with the base fitting into the arm and attached thereto by dowel pins. The structure, arm and base, are then attached as one piece to the body of the automobile and fastened on the inside, making it theft proof.

Defendants also cite Archer patent 1,769,-095. This is an invention for a cowl molding and lamp bracket construction but it still could be part of the prior art since plaintiff has an invention on a mounting, not on a rear view mirror. It's the mounting that counts.

The Archer bracket is in two parts and is also theft proof but it has many disadvantages not present in the Morley patent. In order to attach the Archer lamp bracket it would usually be necessary to bore a separate hole in the side of the car body. The section of the molding near the cowl could not be removed and the holes used to place the lamp bracket where you wanted it. The new hole must be cut where you want the mirror. The arm of the bracket is threaded into the base and continues on through the side of the car body being attached by a nut in the inside. The base of the holder fits under the molding and really serves the purpose of covering up the hole necessarily made to permit the arm to go through the side of the car. Technically this is an "escutcheon" and is so referred to in the Archer patent, but broadly speaking the Archer invention is a two-piece mounting. But of importance is the fact that the

Archer patent had expired and if defendants had thought that the Archer construction provided the means of a desirable rear view mirror, defendants were at perfect liberty to use it. Evidently they did not and contrasting the graceful curves of the Morley rear view mirror with the square abrupt lines of the Archer patent one can understand that it might not have been very profitable to make such desirable changes in the Archer construction.

Other patents have been cited by defendants to negate validity of the Morley patent. Myers patent 59,250 indicates a manner of fastening door knobs on the inside so that they are theft proof. This brought in the dowel pins. Plaintiffs do not claim this feature as patentable. And the Examiner allowed the Morley patent over the McCarroll patent 577,368, which is for a theft proof mail box.

Reverting to the Morley patent, it must be admitted that Morley unquestionably utilized the Sarnes' idea of having a base for his mirror so designed that it fits into the place of the removed molding and thus continues the appearance of the one unit band. In fact the parties have stipulated that Morley saw the Sarnes invention as far back as 1938.

It is apparent, therefore, that the only real difference in this two-piece mirror mounting over prior single and two-piece mountings, lies in whatever advantages flow from the base being fitted into the arm while preserving the theft proof feature. But are those advantages sufficient to put this in the category of a patentable invention?

We have herein purposely reviewed reasons on which a claim of patentability can be justified since we desire to record that we have taken those reasons into consideration. We are also duly appreciative of the decision in Hazeltine Research v. General Motors Corporation, supra, and we further recognize that the extent or simplicity of an improvement is not necessarily important or decisive, Ferro Concrete Const. Co. v. Concrete Steel Co., 6 Cir., 206 F. 666. But even with these facts and rulings before us there is still in our opinion a very good reason why the Morley patent should be declared invalid.

We arrive at this conclusion from a close anaylsis of several additional facts, some of which shed a new light.

Application for the second Sarnes patent was filed January 16, 1939.

Application for the Morley mounting was filed May 17, 1939, which utilized the chief feature of the Sarnes patent, to-wit, having the base of his mounting fit right into the removed molding of the car thus continuing the appearance of the one-unit band.

But we have also examined a brief that was filed by Charles E. Morley in the interference suit No. 78929 between Sarnes and Morley. Here we find that in seeking to prove his case Sarnes introduced a Mr. Roy Pierce, a Ford official, as his witness, and in that suit Pierce, according to the Morley brief, testified that he (Pierce), first suggested the idea of having a two-piece mirror such as the Morley patent here as far back as October 3, 1938. See Morley's Brief, pp. 4, 5, 6, Interference No. 78929. Nevertheless plaintiff Morley used this evidence to prove that Sarnes' claimed inventorship, and of course priority, was nil.

So when you combine all these facts it is apparent that several people seem to have had the thought of this improvement at about the same time. A two-piece arm on a Sarnes base was seemingly "in the air." Admittedly Morley got priority rating. He got his application in first but every improvement is not patentable. The improvement must be "some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. * * * It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures." Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438.

In Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 62 S.Ct. 37, 40, 86 L.Ed. 58, the court said:

" * * * it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be

involved than the work of a mechanic skilled in the art."

Our own Sixth Circuit in United States Gypsum Co. v. Consolidated Expanded Metal Companies, 130 F.2d 888, 892, said:

" * * * we must recognize as have other courts and our own * * * 'the high standard demanded for invention by the decisions of the Supreme Court in recent years,' * * *"

And in Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp. et al., 294 U.S. 477, 55 S.Ct. 455, 458, 79 L.Ed. 1005, the court stated:

"An improvement to an apparatus or method, to be patentable, must be the result of invention, and not the mere exercise of the skill of the calling or an advance plainly indicated by the prior art."

In Electric Vacuum Cleaner Co., Inc., v. P. A. Geier Co., 6 Cir., 118 F.2d 221, 225, the court stated:

"The carrying forward of the original thought with a change only in form, proportions or degree and the doing of the same thing in substantially the same way with more satisfactory results is not invention, but amounts only to a more extended application of an earlier idea of another."

As to Morley's mounting being more salable, the court in Scott & Williams v. Aristo Hosiery Co., 2 Cir., 7 F.2d 1003, 1004, stated:

" * * * it was not the intention of Congress to grant protection to those who confer no other benefit to the public than an opportunity for making the article more salable."

Our courts have stated time and time again that there is no invention in making two parts of one thing when by such change no different function or new and unexpected result is achieved. D'Arcy v. Staples & Hanford Co., 6 Cir., 161 F. 733; Mathews Conveyor Co. v. Palmer Bee Co., D.C., 41 F.Supp. 401; James Heddon's Sons v. American Fork & Hoe Co., 6 Cir., 148 F.2d 230; Allegheny Steel & Brass Corporation v. Elting, 7 Cir., 141 F.2d 148; In re Davis, 86 F.2d 342, 24 C.C.P.A., Patents, 704; Wagenhorst v. Hydraulic Steel Co., 6 Cir., 27 F.2d 27. See also National Pressure Cooker Co. v. Aluminum Goods Mfg. Co., 7 Cir., 162 F.2d 26.

It is our conclusion, therefore, that when Morley made his application for the two-piece mounting he had before him the suggestion of Sarnes "(any other suitable manner)," and probably the suggestion of Pierce, that the arm could be attached to the base other than integrally. In the case at bar years did not elapse between the appearance of the first patented article and the improvement; merely a matter of months. Morley's improvement, in our opinion, is a change that would ordinarily have been developed by one versed in the art in a comparatively short time.

For these reasons we hold that the patent is invalid.

### Unfair Competition

While there may be a question of whether there could be unfair competition in this case when the patent itself is invalid, we hold that although the activities of the defendants are not above reproach, and although it is possible that there may have existed instances of unfair competition, the proof in this case of such unfair competition or damage therefrom is entirely lacking.

Judgment for defendants with no costs allowed.