GENERAL ELECTRIC CO. v. CONDIT ELECTRICAL MFG. CO.

(Circuit Court, D. Massachusetts. October 24, 1911.)

No. 330.

1. PATENTS (§ 297*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

Where, in a suit for infringement, although the patent has been adjudged valid in a prior suit, an entirely new issue as to anticipation is raised and supported by testimony which is convincing if credited, unless such testimony is clearly impeached by complainant, his right is too doubtful to warrant the granting of a preliminary injunction.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 488; Dec. Dig. § 297.*

Grounds for denial of preliminary injunctions in patent infringement suits, see note to Johnson v. Foos Mfg. Co., 72 C. C. A. 123.]

2. PATENTS (§ 260*)—INFRINGEMENT—WHAT CONSTITUTES.

The violation of the sole right of a patentee to manufacture and sell the patented article cannot be justified by a special use, nor by an entire nonuse of the infringing article.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 359; Dec. Dig. § 260.*]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ELECTRIC SWITCH.

A preliminary injunction against infringement of the Hewlett & Emmet patent, No. 800,916, for a removable oil can, high potential electric switch denied, but granted as to the Emmet & Hewlett patent, No. 789,-597, for a high potential switch.

In Equity. Suit by the General Electric Company against the Condit Electrical Manufacturing Company. On motion for preliminary injunction. Granted in part.

Richardson, Herrick & Neave, for complainant.

Edward P. Payson and Edwards, Sager & Wooster, for defendant.

BROWN, District Judge. This is a petition for a preliminary injunction against infringement of letters patent to Hewlett & Emmet, No. 800,916, October 3, 1905, and of letters patent to Emmet & Hewlett, No. 789,597, May 9, 1905. Patent No. 800,916, though later in number, is for the earlier invention, and relates to what has been termed a "removable oil can, high potential electric switch." The patent to Emmet & Hewlett is for a high potential switch, and may be regarded as for improvements upon the switch of the other patent.

Both of these patents were in litigation, and were sustained by the decision of the Circuit Court of Appeals for this circuit in opinion

handed down March 2, 1911. General Electric Company v. Hartman, 187 Fed. 131. Reference to this opinion is made for a description of the subject-matter of the patents and for grounds upon which the devices were held to involve patentable invention.

[1] To the Hewlett & Emmet patent, No. 800,916, two defenses are made; that in view of the prior patents not before the court in the Hartman Case the patent is invalid for lack of novelty; and prior invention and use by Elden.

The combination of the patent in suit involves not only a removable oil can, but switch members so organized as to adapt them to use with the removable oil can. The inventive conception included not only the removable oil can, but the reorganization of the switch members. The switch and oil can were combined, and brought into a new relation which required a change from the switch construction of the prior art and also a change in the oil can of the prior art.

Without considering in detail the prior patents now presented which were not in the Hartman Case, it may be said that none of them seems to anticipate this combination, and that it is highly doubtful that if presented in the former litigation these patents would have changed the result.

The defense of prior invention and use by Elden is important and raises a serious question as to the actual priority of invention. Before Hewlett & Emmet's application date, January 15, 1900, Elden had constructed and used a removable oil can switch in which the switch members were independently mounted so that an oil can could be passed up from below, immersing the contacts in oil. This was clearly an anticipation.

The date claimed for Hewlett & Emmet, however, is May 1898. There is testimony of a very positive character from a number of witnesses that Leonard L. Elden, an electrician in charge of the electrical apparatus of the Boston Electric Light Company, had previously constructed a switch with a removable oil can. There is corroboration by Horton, a draftsman, who made the drawing, by London, who identifies the drawing and testifies to having built the switch like it, and by several other witnesses. Had this testimony been presented in the former litigation without impeachment it is probable that Hewlett & Emmet would have been held to have been anticipated by Elden.

The complainant makes no attempt to establish a date earlier than the date testified to by Elden and other witnesses, but makes an elaborate attack upon the accuracy and integrity of the testimony.

Much stress is put upon the inconsistency of this testimony with the formal oath of Elden in the Patent Office that his invention had not been in public use for more than two years. Whether there is such inconsistency as should discredit the witness is not clear. Upon a question of veracity the inquiry would not be whether, under a strict legal rule as to what constitutes public use the oath is inconsistent with the facts stated, but whether it is inconsistent with the present testimony as a matter of ordinary understanding and ordinary honesty. What constitutes a public use has been a matter of conflict of opinion, and an inconsistency between the present testimony and the oath,

upon a strict application of the law as to public use, does not necessarily show that there was any conscious inconsistency or lack of integrity in the witness.

However this may be, it is merely a question of the impeachment of the credibility of one of the present witnesses as to facts wherein he is corroborated by a number of other witnesses. The witnesses are apparently men who were competent to observe correctly. The testimony of so many witnesses can hardly be rejected on the ground of any difficulty in remembering so simple a structure as a removable oil can combined with a switch mechanism.

As the case rests the defendant has fully offset the prima facie effect of the patent and of the prior litigation by showing a machine which antedates the application date. He has also produced evidence of a date of invention which antedates the earliest date claimed for the patentee. The burden of the case is thus left upon the complainant to show mistake or willful fabrication upon the part of several witnesses who are presumably respectable and entitled to credit.

There is a very considerable conflict in the affidavits over collateral matters relied upon to fix the dates. There is confusion growing out of the use of different types of switches, and it is evident that the controversy is one that cannot properly be determined upon affidavits. The burden of impeachment of a definite story supported by a considerable number of witnesses rests upon the complainant. This issue is entirely new, and it seems contrary to principle to grant an injunction on this patent unless satisfied with the complainant's impeachment of the veracity or accuracy of a number of witnesses. Upon the case as presented by the affidavits the complainant's right is too doubtful to justify a preliminary injunction.

As to the Emmet & Hewlett patent, No. 789,597, the defenses are noninfringement and lack of novelty in view of a prior art not before the Circuit Court of Appeals in the Hartman Case.

Upon an examination of each of the patents cited I am of the opinion that if presented in the former litigation these patents would not have changed the result.

That the defendant's structure is an infringement of the Emmet & Hewlett patent seems clear. There is so close a correspondence between the complainant's device and the defendant's as to lead to the conviction that the defendant's device is a close copy of the complainant's, especially as evidence of an independent origin is lacking. The defendant cannot justify the manufacture of the complainant's structure upon the ground that a comparatively noncarbonizable oil is used with it by the defendants or its customers. The structure being adapted to avoid the evils of carbonization of oil, is patentable because of its adaptation to such purpose; whether it is actually used for that purpose is immaterial.

[2] The complainant has the sole right to manufacture and sell its patented device, and no person can justify the manufacture and sale of this device merely because he intends to use it in some other way than that suggested by the patentee. The violation of complainant's sole

right to manufacture and sell can be justified neither by a special use nor by an entire nonuse of the structure so manufactured.

[3] The patent was issued October 3, 1905, and suit was brought thereon against this defendant on March 22, 1907. Pending the Hartman Case, brought January 29, 1907, neither party seems to have used particular diligence in bringing this case on for hearing. After the decree in the Hartman Case, which seems to have been regarded as a test case, complainant has been reasonably diligent. Under these circumstances the complainant cannot be held guilty of such laches as bar the right to a preliminary injunction.

The petition for a preliminary injunction is granted as to the Emmet & Hewlett patent No. 789,597, and is denied as to the Hewlett & Emmet patent No. 800,916.

A decree may be presented accordingly.