## CONDENSER CORPORATION OF AMERICA v. MICAMOLD RADIO CORPORATION et al.

### No. 1823.

District Court, E. D. New York.

Jan. 24, 1944.

328

Edwards, Bower & Pool, of New York City (Clifton V. Edwards, Wilfred D. Keith, and Frank A. Bower, all of New York City, of counsel), for plaintiff.

Ward, Crosby & Neal, of New York City (Kenneth S. Neal, of New York City, of counsel), for defendants.

CAMPBELL, District Judge.

This action is brought by plaintiff to recover from defendants for the alleged infringement of Patent No. 1,940,847 issued by the United States Patent Office to Harold L. Danziger for Apparatus for Winding Coil Condensers, dated December 26, 1933, on an application filed May 10, 1926, and for an injunction.

The defendants interposed an answer alleging the defenses of invalidity and non-infringement.

The ownership of the patent and the giving of the notice required before the commencement of the action are conceded.

Plaintiff is a wholly owned subsidiary of Cornell Dubilier Corporation. These companies, and the corporate defendant, are all engaged in the manufacture of condensers.

Both defendants reside in this district and jurisdiction is admitted.

The defendant Alexander P. Hirsch is the president of the corporate defendant Micamold Radio Corporation, owns some stock, and votes other stock of a number of members of his family.

I shall hereinafter, for convenience, in this opinion describe the corporate defendant as defendant, and where the individual defendant is in question describe him either by name or as the individual defendant.

Plaintiff bases its action upon two groups of claims of the said patent, to wit: claims 1 to 3, both inclusive, and claims 9 to 12, both inclusive.

Claim 1 of the first group, which is fairly representative of the 1 to 3 group, reads as follows: "1. In a condenser winding machine, a supply of paper, a supply of metallic foil, a rotatable arbor on which the paper and foil are adapted to be wound, means for severing the foil and paper, means driven in timed relationship with the arbor, and means controlled by the last-mentioned means for causing the operation of said severing means to sever the foil prior to the severance of the paper."

Claim 2 differs from claim 1 in using the word "adjustable" in claim 2 with reference to the "means driven in timed relation with the arbor,".

Claim 3 likewise differs from claim 1 in stating in claim 3 that the parts driven in timed relation with the arbor are adjustable.

Claim 9 of the second group, which is fairly representative of the 9 to 12 group, reads as follows: "9. In apparatus for winding a continuous strip upon a mandrel, means for exerting a continuous pull upon the strip in the direction of the mandrel, means for cutting said strip during the winding thereof after a predetermined length thereof has been wound, and means operable in timed relation to the cutting means for momentarily increasing the tension of the strip."

All of the claims of that group relate to the combination of elements which operate to increase tension during the cutting operation, the differences being in the language by which the elements of the combination are described. Claims 9 and 10 recite in broader terms, and dominate claims 11 and 12 in which the mechanical combinations are more specifically claimed.

This patent relates to the art of manufacturing condenser bodies made of paper and metal foil. It is an old art, and consists in the winding together of very thin and fragile foil and paper strips to form a composite compact foil and paper condenser made up of two foil strips surrounded and insulated from each other by paper strips.

In the preparation of the condenser it is important that at least one foil strip be shorter than the paper strip.

The claims in suit are to a new combination of mechanical means, each of which means co-operates in the production of new and novel results in condenser winding machines.

The mechanical elements and means used in the combination were all old, well known, and in common use, but the patentee, Danziger, was the first to incorporate them in a new mechanical combination in the condenser winding art, thereby producing new and useful results. Such combinations are patentable. Hailes v. Van Wormer, 87 U.S. 353, 22 L.Ed. 241; Grinnell Washing Mach. Co. v. E. E. Johnson Co., 247 U.S. 426, 432, 38 S.Ct. 547, 62 L.Ed. 1196.

The patent in suit is not a pioneer, and therefore is not entitled to the wide range of equivalents accorded to such a patent, but is entitled to such a range of equivalents as will protect the invention of the patent in suit.

The problem which confronted the patentee of the patent in suit was to construct an automatic machine which would overcome the dependence on the operator of the hand operated machine, which were the only ones in use prior to his invention, to relieve from the consequent errors of the operator in hand operation, to relieve the damage caused by undesirable grit and moisture on the hands of the operator of the hand operated machine, to produce condensers of a uniform capacity (electrical characteristics) and to properly insulate the foil.

The machine of the patent in suit had considerable commercial success and that is to be considered if there should be a doubt on the question of invention.

The defendants, in support of their defense of invalidity, offered the British Patent to Siemens and the United States Patent to Jones, and the United States Patent to Parrish, but three patents, which they allege are prior art, and anticipate the patent in suit.

Not only has the patent in suit presumption of validity of a granted patent but, that presumption is strengthened by the fact that the said patents presented here as the most pertinent prior art were, with the exception of the patent to Parrish, considered by the Patent Office, and the patent in suit was issued over them. Otis Elevator Co. v. 570 Bldg. Corporation, 2 Cir., 98 F.2d 699, 702; Ensign Carburetor Co. v. Zenith-Detroit Corporation, 2 Cir., 36 F.2d 684, 686.

The presumption, it seems to me, is strengthened by the controversy in the Patent Office, and the allowance of the patent thereafter. Celanese Corporation of America v. Essley Shirt Co., 2 Cir., 98 F.2d 895, 896.

I entirely disagree with the defendant's construction of the alleged prior art patents, and find with reference to them as follows:

British patent to Siemens Brothers & Company, Limited, No. 13,682 of A.D.1905, for "Method and Apparatus for the Manufacture of Electrical Condensers" accepted October 12th, 1905.

The machine of that patent is almost completely hand-operated. Strips of foil and paper are applied to a mandrel j from

supply rolls, which may be operated either by hand or power. The foil rolls are manually operated by a handle o, at certain times during the machines operation. That patent does not show any paper cutting means.

The British patent to Siemens does not show, so far as I can observe, the specific combinations of the claims of the patent in suit, on which plaintiff relies. That Siemens patent shows a machine which has all the disadvantages of the hand winding machine, of the prior art, which it really is.

The machine of that Siemens patent was seen in operation by the plaintiff's expert witness Van Deventer in the plant of the owners thereof in 1910, and in 1918. At those times it was operated without a foil cutter, for the reason that the cutter shown in that patent did not work, and did not have the levers O and Z shown in Fig. 4.

Of course it was what was disclosed by the patent, not the machine, that we must consider, but it would appear quite significant that its owners did not follow the disclosures of that patent.

That, however, is not of much weight, but, I am impressed by the fact that the Siemens patent was accepted October 12th, 1905, and with the desire there was for an automatic condenser winder, the Siemens patent was not availed of, and there was no satisfactory automatic condenser winder on the market until Danziger, the patentee of the patent in suit, produced the first satisfactory automatic condenser winder.

That the machine of the patent in suit had novelty and utility is clearly shown by the fact, that the defendant has been operating several of them in its plant, as have others, but, there is no proof of acceptance by those skilled in the art of the machine of the British, Siemens patent. It was cited as a reference in the Patent Office, and the patent in suit issued over it.

The Siemens British patent does not anticipate the patent in suit.

United States Patent No. 1,532,753 to John G. Jones and Haywood G. Dewey, assignors to Eastman Kodak Company, for Automatic Film-Spooling Machine, granted April 7, 1925, on an application filed May 31, 1923.

That patent lies in the art of photographic film-spooling, and its mechanism is complicated, and designed for the purpose of that art, and it was fully considered by the Patent Office, and the patent in suit issued over it.

It seems to me that the great difference between the handling of the strong rugged photographic film and paper of the Jones patent, and the thin fragile foil and paper of the condenser, as disclosed in the patent in suit, is apparent, and I do not see how the film and papers used in the machine of the patent in suit could be used without injury, by the machine of the Jones patent.

I can see no reason why those skilled in the art of winding condensers would turn to the photographic art for teaching, as the two differ so greatly, and this is as true of those who made defendants accused machine, as it is of the patentee of the patent in suit.

The disclosure of the Jones patent is very complicated, and, as I read it, that patent certainly did not teach the patentee of the patent in suit, a man long experienced in the condenser art, any of the disclosures of the patent in suit. As I read the Jones patent, he does not disclose that the cutting devices are driven by means operating in timed relation with the mandrel or arbor. In fact, the machine of the Jones patent contains no mandrel, and the mechanical means, which rotate the spool upon which film is wound, appear to have no definite connection with the knives that cut the film. The cutting, or rather the tearing of the heavy photographic paper, seems to be accomplished after the winding operation has stopped.

The Jones patent did not anticipate.

United States Patent No. 646,605 to Asa L. Parrish, assignor to the National Manufacturing Company, for Paper-Bag Machine, granted April 3, 1900, on an application filed February 27, 1899. That patent teaches, particularly in Fig. 3 and the description beginning at line 72, column 2, page 1 of the patent, the use of a relatively stiff material, such as a paper bag or paper tube, which has its free and advanced end advanced by the feeding rolls T, in the direction of and through the normally open rollers I,I'. After this free end has advanced through the rollers I,I' to a sufficient extent, these rollers close and keep the material taut until knife L mounted on roll I has cut the material. Then rolls I,I' open and feed rollers T feed more material between them. In fact the material, before the rolls I,I' close, is not under tension or

being pulled, and after the rolls I,I' close, tension is applied for the first time by the action of the rolls I,I', which by such action tend to hasten, rather than retard, the feed of the material through the rolls T,T. That is neither the combination, nor the result of the machine of the patent in suit, nor of the defendant's machine.

In the patent in suit, and in the defendant's machine, the mandrel exerts a continuous pull on the paper strip at all times, thus maintaining at all times the condition only intermittently established by the closing of Parrish's rolls I,I'.

Thereafter rolls 28 of the patent in suit, rolls 4 of the defendant's machine, close, not to initially create tension but to increase momentarily the existing tension and to retard rather than hasten the travel of the strip.

Parrish does not show what is claimed in claims 9 to 12, inclusive, of the patent in suit, that is, a combination which includes means for exerting a continuous pull upon the strip, and means for momentarily increasing the tension of this continuously pulling strip.

Furthermore, Parrish does not show a combination in which the strip retarding means, or the means which counteracts the continuous pull in behind the point of cutting, which is specifically claimed in claims 10 to 12, inclusive, of the patent in suit.

What Parrish shows in his device is the rolls I,I' lying forwardly of the point of cut, which hasten rather than retard the travel of the material.

The differences to which I called attention are not mere differences of form, but, are differences of substance, as Parrish only proposes a condition which the patent in suit improves, but not in the way proposed by Parrish.

I have discussed the Parrish patent at some length, but, in so doing, I am not conceding that it is in any way pertinent to the issues here. I can find nothing in the British patent to Siemens which would indicate the desirability of using increased tension or the particular gadget of Parrish. There is nothing contained in the Parrish patent to indicate that any fruitful thing would come from its use in association with the British Siemens patent. The paper used in the Parrish patent must be a stiff material, and the fragile paper used in the Siemens British patent would not be stiff enough to maintain its plane of travel. Parrish did not have in mind a mandrel for the purposes described in the patent in suit.

In my opinion the machine of the Parrish patent and the machine of the Siemens patent cannot be combined.

The Parrish patent does not anticipate.

■ The patent in suit is valid.

We now come to the question of infringement.

■ All of the claims in suit are for combinations. Mere form is not of the essence. Defendant's machine must be compared with the claims in suit, and with the machine in the patent in suit. Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935.

The operation, nature, location and function, of each part of defendant's machine is established by the stipulated description thereof, Exhibit 12, which appears on the record pp. 52–60, and illustrated by the drawings, Exhibits 8 and 9, which form part of that stipulation.

A comparison of the elements of the patent and of the claims in suit with the corresponding elements of the defendant's alleged infringing machine, shows that there exists a similar element or similar function and mode of operation in defendant's machine. The machine of the patent in suit and the defendant's machine have similar elements, each of which elements has the same functional arrangement and place in defendant's combination as it has in the claimed and illustrated combination of the patent in suit.

Plaintiff offered in evidence Exhibit 10, a diagramatic sketch prepared and explained by plaintiff's expert, the reference numerals used being those of the patent in suit. Further comparing as to claim 1, defendant has, in some instances, obviously substituted equivalent gears for the racks and cams of the patent in . iit, the only notable . difference between the structure shown for defendant's machine, and for the machine of the patent in suit in such exhibit is the existence in the defendant's device of four cutters 37 in the right foreground of the sketch, rather than in the middle of the sketch as shown for the patent in suit. This difference in form resulted from defendant's alteration of an older non-automatic machine to incorporate therein the combination of the patent in

suit. The placing of the foil cutters 37 to the right in this alteration necessitated the mounting of the cam 43 and the arm 50 on the chain drive extension of shaft 41. No change resulted from this in the fundamental elements of the combination, their function, mode of operation or relation to each other.

Claim 1 reads on the defendant's machine. Each machine sketched in Exhibit 10 is a condenser winding machine having a supply of paper and metallic foil (not shown), a rotatable arbor (13) on which the paper and foil are adapted to be wound, means for severing the foil (cutters 37) and paper (cutter 38), means (41) driven (gears 16, 17, 18, 19) in timed relation with the arbor (13), and means (43 and 50 for the foil; 42, 47, 49, 57, 58, 59, 60 or the equivalent A, B–C, 57, D, E, 60 for the paper), controlled by the last mentioned means (41) for causing the operation of said severing means (cutters 37 and 38) to sever the foil prior to the severance of the paper.

Defendant's machine infringes claim 1.

Claim 2 differs from claim 1 in that in claim 2 there is used the word adjustable with relation to the "means driven in timed relation with the arbor".

In the patent in suit the means is shown as the shaft 41 and the cams 42, 43. Between the cams 42, 43 is located a gearing consisting of sector 44 and pinion 45 by actuation of which the cams may be adjusted with relation to each other so that the cutting operation on the foil strips can be adjusted in point of time, to the cutting operation on the paper strips.

Referring to Exhibits 8 and 9, in defendant's machine cam 43 mounted on the extension of shaft 13 and gear 32 mounted on shaft 13 are the means driven in timed relation with the arbor. Because of their separation in point of space no connecting adjusting mechanism could exist between them, but cam 43 is mounted on the extension of shaft 13 by means of a set screw, and the cam 43 can be adjusted relative to its shaft.

Such adjustment would of course change the relation of the cam surface of cam 43 to the arm 50, thus changing the time that the foil cutters 2 would cut the foil.

Defendant's adjustable cam 43 is adjusted through cruder means than is the patent in suits' adjustable cam 43, but both are in fact adjustable before an operation

starts to vary the interval between the operation of the foil cutters and the operation of the paper cutters.

■ Defendant cannot relieve itself from infringement by what I understand to be their contention, namely, that they do not adjust their cam 43 because, as they contend, they find no need for it. They must, however, of necessity make the adjustment when they originally set the machine for operation, and they could do so at any time if they wished. Therefore, the machine, the use of which it is sought, in this suit to restrain, contains the adjustable means in accordance with claim 2, and is adapted to infringe, and that constitutes infringement. Carter-Crume Co. v. American Sales Book Co., C.C., 124 F. 903; General Electric Co. v. Condit Electrical Mfg. Co., C.C., 191 F. 511, 513, affirmed, 1 Cir., 196 F. 42; Caterpillar Tractor Co. v. International H. Co., 9 Cir., 106 F.2d 769, 774.

Defendant's machine infringes claim 2.

As to claim 3. What has been said as to claim 2 applies with equal force to claim 3, and need not be repeated here.

Defendant's machine infringes claim 3.

We now come to a consideration of the alleged infringement of claims 9–12, both inclusive, of the patent in suit, by defendant's machine, and as those claims recite the same combination, the difference being in the language by which the elements of the combination are described, we may consider them in a group.

These claims read on the defendant's machine, and the stipulated operation of defendant's machine shows the exact identity of the elements of the defendant's machine, their function and mode of operation, with the elements recited in those claims and shown in the patent in suit.

I can not agree with defendant's claim as to difference.

With the exception of the change in the shape of parts, the defendant's combination is that of the patent in suit. This is clearly shown in the diagramatic sketch (Exhibit 11) of the essential parts of the two machines, prepared and explained by plaintiff's expert witness. The reference numerals used are those of the patent in suit, and that exhibit shows that the actuating means for opening and closing the rolls and its relation to the mandrel (the parts 67, 69, 85–86, 63; driven off shaft 41 which is in turn driven from mandrel shaft 13

through gears 17, 18, 19) is exactly the same.

While the defendants contest the plaintiff's contention that defendant's machine contains means operable for momentarily increasing the tension of the strip, as claimed in claims 9–12, both inclusive, of the patent in suit, or if such means exist they are merely incidental and not functioning to produce any useful result in the operation of defendant's merchandise, I am convinced that defendant is in error.

The teaching of the patent is that the feed rollers 4 be so adjusted that the tension on the strip is increased during the cutting operation, and reduced during the winding operation.

The stipulated description of the operation of defendant's machine is quite convincing when it says: "At or just prior to the time cutter 1 operates, the feed rolls 4 located just above the cutter 1 are pinched together to engage the foil No. 1 and paper strips which pass between them. The machine is adjusted as accurately as possible so that cutter 1 cuts at the time rolls 4 pinch together" and also,

"Cam 24 is so positioned on shaft 13 that the rolls 4 close at a short time before or as the knives operate to cut the paper and Foil No. 1."

Whether the rolls 4 in the defendant's machine either close a "short time before" (or) "just prior" to the time the knives operate to cut the strip or the rolls close "at" the time the knives cut (or) "as the knives operate" it is clearly shown that the rolls 4 close before the cutters operate.

This raises the question whether or not in so closing the rolls 4 "momentarily" increases the tension on the strip pinched between them? The stipulation, Exhibit 12, gives the data necessary to this determination.

It seems to me to be apparent that as the surface of the rolls 4 travels slower than the surface of the strip which they frictionally engage a short time before the knives operate, the tendency of the rolls will be to exert frictional force against the downward movement of the strip, and thus increase the tension on the strip.

On the other hand, if the surface of the rolls 4 is driven at a speed equal to, or exceeding, the speed of travel of the strip, then no extra tensioning effect will be produced.

The speed of the strip passing through rolls 4 is dependent primarily on the diameter of the condenser being wound, which diameter increases as the condenser is wound. Therefore, as there was established by stipulation the relation between the speed of the roll shaft 17 and the speed of the mandrel shaft 13, and the diameter of the rolls 4, as well as the diameter of the condensers, it was a simple matter to calculate and find that the speed of the strip would exceed the speed of the surface of rolls 4, whenever the diameter of the condenser being wound exceeds 0.273 inch. Defendant having, by stipulation, admitted that it had manufactured condensers of diameters as great as 0.35 inch, it follows that defendant's rolls 4 operate in timed relation with cutters 1 to close a short time before those cutters act, and to momentarily increase the tension on the strip when condensers of 0.35 inch are made by defendant.

This was not directly met by defendant, and the question is naturally presented, if as is contended on the part of the defendant, why if tension is undesirable, unwanted, and not useful, did defendant close rolls 4 before, or at the cut? Why did they not close them just after the cut? If they had done so, no tension, as contemplated by the patent in suit, could exist.

Infringement of claims 9–12, inclusive, does not take place when in the operation of defendant's machine the rolls 4 are closed after the cutting of the strip, or when at any time the condensers produced are 0.273 inch or less in diameter. But, even under those conditions, if they existed, those claims are infringed as defendant's machine embodies "means operable in timed relation to the cutting means for momentarily increasing the tension of the strip" in the rolls 4, and whether or not they are actually used for this purpose the mere changing of the mandrel size, which according to the stipulation is common with defendant, may at any time cause the machine to operate in an infringing manner by increasing the diameter of the condenser wound, thereby increasing the speed of the surface of rolls 4.

The manufacture of a device adapted to infringe constitutes infringement. Carter-Crume Co. v. American Sales Book Co., C.C., 124 F. 903; General Electric Co. v. Condit Electrical Mfg. Co., C.C., 191 F. 511, 513, affirmed, 1 Cir., 196 F. 42; Cater-

pillar Tractor Co. v. International H. Co., 9 Cir., 106 F.2d 769, 774.

The defendant contends that its machine does not infringe the patent in suit because of certain alleged differences as to which it introduced considerable testimony. These alleged differences appear to me to be of form and appearance, but do not relieve from the infringment of the combination of the patent in suit.

I will briefly discuss those featured by the defendant.

In the machine of the patent in suit the elements of the combination are so constituted and operated that the foil is severed prior to the severance of the paper. Despite the oral testimony of defendant's witness, it is clearly apparent from Exhibit 13 that in defendant's machine the foil is severed in the cycle after the beginning of the winding operation, and before the severance of the paper during that operation. This is also shown in defendant's Exhibit K, two figures under the title, "I—Near End of Roll-Winding Operation." This is also in accordance with defendant's stipulation in which it is said: "Just after winding of the new condenser roll has started the length of foil No. 2 which has been lying in the chute 39, is cut * * *. When the condenser roll on mandrel 11 has been wound to the desired size, the cutter 1 is operated to cut the paper strips and foil strip No. 1."

The two feed rolls 24, 24' in the machine of the patent in suit lie above the mandrel and feed foil downwardly during the condenser winding operation. Of the two foil supply rolls in the defendant's machine, one lies above and feeds downwardly during the condenser winding operation, and the other is mounted to the side of the mandrel and feeds across the face of the machine, and in order to keep it from swinging out of position during the operation as it is loose, defendant found it necessary to provide a chute or plate 39, which is larger than plate 39 of the patent in suit, to support the foil No. 2 during its travel to the mandrel, and the time while it is at rest. That chute has no function in the operation of the machine parts, and has no function other than I have just described, and does not enter into the mechanical combination to any greater extent than does the smaller platform or plate 39 of the patent in suit. The functions of plate 39 of the patent in suit and of defendant's machine have to the extent indicated similar functions.

The contention of the defendant that there was a difference between the defendant's machine and the machine of the patent in suit, in that in defendant's machine the length of foil No. 2 which is to be cut and used in the next condenser winding operation is laid out on the chute or plate 39, during the preceding condenser winding operation is not sustained. There is no difference. The oral testimony on behalf of defendant in this regard is refuted by Exhibit K, the first two figures under the title "I—Near End of Roll Winding Operation." In both the machine of the patent in suit, and defendant's machine, the foil has been cut, and in both cases the lower cut portion is being wound on the mandrel, and the upper portion still attached to the supply reel is being fed toward the mandrel for the next operation. Fig. 1 of the patent in suit shows the operation as to the patent in suit and the stipulation shows it as to defendant's machine.

As illustrated and described in the patent in suit, both foil strips are cut previously to the cutting of the paper strips, resulting in a finished condenser containing two foil strips. In the defendant's machine only one of the foil strips is cut previous to the cutting of the paper strips, the other being cut with the paper strip, resulting in defendant's machine producing a condenser with one short foil. There are two general kinds of condensers on the market, one in which both foils are cut short, and the other in which one foil is cut short.

The machine of the patent in suit may be modified to make a condenser with only one foil cut short, by omitting or disabling one set of foil cutters.

In defendant's machine one set of foil knives is merely omitted. This omission to cut both foils before cutting the paper does not change or alter either function or operation of the mechanical combination which is embodied in defendant's machine from that set forth in the claims in suit of the patent in suit.

The defendant is not relieved from infringement because it decided not to build a machine which could not do all the things done by the machine of the patent in suit. Allen v. Wingerter, 3 Cir., 17 F.2d 745, 747.

The attempt on the part of defendant's witness to distinguish between automatic

and semi-automatic machines seems to me not to be in point. The machine of the patent in suit is fully automatic once the strips have been threaded on the mandrel and operated, started by throwing a switch. This is likewise true of the defendant's machine, as the stipulation says "with reference thereto", "Once the motor 7 has been set in operation by the operator at the beginning of a condenser winding or rolling operation, the continued action of the machine is thereafter governed by the electrical control E on the shaft 12." The fact that occasionally a strip of foil sticks going down defendant's plate, necessitating prodding by the operator's finger, does not show that defendant's machine is not automatic, as in fact both the machine of the patent in suit and defendant's machine are automatic.

Defendant's attempt to discredit the machine of the patent in suit, because of the alleged failure in the manufacture of small condensers, failed. The patentee of the patent in suit, long before the trial of this cause, testified that on the original machine of the patent in suit the plaintiff here had wound condensers of less than .350 inch in diameter, and Weiss, an employee of Cornell-Dubilier, testified on the trial of this cause that at the New Bedford plant of that company there was in use in production, and had been in production for some years, a smaller machine, identical with the machine of the patent in suit, in which various parts shown in the patent in suit were placed closer together, and on which machine thousands of condensers of a diameter of .250 inch were being produced daily.

The operability and utility of the machines of the patent in suit is clearly shown by the fact that defendant possesses 13 of them, and claims a license as to them by reason of the rights of the vendors.

I can find nothing but colorable departures from the patent in suit in the defendant's machine, and that does not relieve from infringement. Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147.

The defendant's contention that claims 9 to 12, inclusive, of the patent in suit are invalid for unlawful expansion is not sustained. Without going into a particular discussion of each statement, it seems sufficient to say that as appears from Exhibit 14 the patentee of the patent in suit originally claimed, and continued to claim, the momentary increase of tension. The modification of patentee's claim in progress of the patent in suit, through the Patent Office, merely narrowed the claim, but the mode of operation as described in the Danziger application as originally filed was in no way materially altered.

The idea of free wheeling, which defendant has attempted to bring into this case, is in my opinion unsupported by the facts. Of the structure shown in Fig. 7 of the patent in suit, nothing is said as to the amount of friction which that structure generates in contacting the strip.

What the patentee of the patent in suit did was all that it was necessary for him to do, that was, to illustrate and describe a means which would momentarily increase tension. That is what the patentee disclosed and the defendant copied.

The machine of the defendant infringes all of the claims in suit of the patent in suit.

As to the individual defendant Alexander P. Hirsch, I can not find liability.

The Micamold Radio Corporation is a corporation, and Alexander P. Hirsch is its president, treasurer and a director. He is the owner of a comparatively small portion of its capital stock, and while he has the right to vote a large portion of the stock held by his relatives, the corporation is not a shield merely to protect him in case of infringement, in fact, it seems to me, that he has not acted in any other manner than is usual for an officer of a corporation to act.

The patent in suit is valid, and the corporate defendant has infringed all the claims in suit of the patent in suit.

A decree should be entered in favor of the plaintiff against the defendant Micamold Radio Corporation, with injunction and costs, and the usual order of reference; and, in favor of the defendant Alexander P. Hirsch, dismissing the complaint as to him, without costs.