## SAKLAD v. HURLEY SHOE CO.
### No. 3344.

District Court, D. Massachusetts.
June 20, 1933.

Jesse A. Holton, Joseph B. Abrams, Robert L. Thompson, Roberts, Cushman & Woodberry, and William Gates, Jr., all of Boston, Mass., for plaintiff.

Louis H. Harriman, Marcus B. May, and Herbert A. Baker, all of Boston, Mass., for defendant.

BREWSTER, District Judge.

This is a patent infringement suit based upon letters patent No. 1,586,120. The defenses are invalidity of the patent and noninfringement.

### Statement of Facts.

██ (1) On May 25, 1926, letters patent of the United States No. 1,586,120 were issued to the plaintiff on his application filed August 26, 1925.

(2) This patent related to an improved last used in the manufacture of boots and shoes, designed to support the arch of the foot of the wearer.

(3) The first claim of the patent is as follows:

"1. An improved last provided with a longitudinal instep arch extending from the ball of the toe portion to adjacent the rear end of the heel, a recess in the bottom of the last, separate from the longitudinal arch, to permit an arch supporter to be formed in the

shoe made on said last between the first and fifth metatarsal joints to support the anterior arch of the foot, the longitudinal arch being elongated forwardly of said recess and extending rearwardly to adjacent the rear end of the heel to permit natural positioning of the oscalcis in the shoe made on said last, and the outside drop shank and cuboid extension being so constructed as to result in the supporting of the outer longitudinal arch of the foot by said shoe."

(4) The second claim differs from the first only in that it adds particulars respecting the formation of the recessed portion which adds nothing of a patentable nature to the first claim. The first claim, therefore, adequately defines the invention for which a patent has issued.

(5) This claim is a combination claim embodying (1) longitudinal instep arch, (2) a recess in the bottom of the last separate from the longitudinal arch, and (3) an outer arch.

(6) The inner arch is represented by a cut-away and rounded portion on the inside of, and adjacent to, the bottom of the last. The rounded portion begins at a point corresponding to the ball of the toe and ends at the rear end of the heel, thus permitting the "natural positioning of the oscalcis" in the shoe made on the last. Stress is laid by the plaintiff upon the rearward extension of this arch or rounded portion. He says that to naturally position the oscalcis, or heel bone, the arch should not only extend to its bottom part but slightly beyond it. Ordinarily, the heel bone is tipped a little to the outside, and, by extending the inner arch of the shoe slightly beyond the bottom point of the bone, this naturally outwardly tipped position is maintained. To thus extend the arch would carry the rear end of it to the rear portion of the heel. These details are important, both on the question of patentability of the last and of infringement. It appears from the evidence before me that this rearward extension of the rounded inner portion, in combination with a recess, constituted the advance over the patented art. From the file wrapper it is evident that this feature was urged upon the Patent Office as the patentable novelty in the invention. The significance of the extended inner arch is further demonstrated by the patent which issued to the plaintiff October 12, 1928 (No. 1,685,-827), on shoes made on lasts covered by the patent in suit. In the later patent, it is pointed out that the object of the last is to provide a shoe that will have a greater cup-

ped heel seat than has theretofore been employed. I quote from the specifications:

"Because of the special configuration of my improved shoe made on my novel last, the heel part of the outsole, particularly on the inside of the arch of each foot, is slightly raised, instead of being substantially horizontal or long as in normal shoe construction. Therefore the heel seat, in order to be fitted with the usual heels, is 'offset' to a certain extent. To build up this offset portion and compensate for the same, I apply the wedge member shown in Fig. 3. * * * As shown in Figs. 1 and 3, the corrective wedge member 10 is substantially rectangular in form, and has its point of greatest thickness at the inner heel breast and forward side of the heel where the wedge is exposed. The specific positioning of this wedge is of the greatest importance in the shoe illustrated in the drawings."

(7) The recess is formed in the ball of the bottom of the last by cutting away a portion to form a depression separated from the rounded portion or inner arch which gives to shoes a corresponding hump in the inner sole. The patentee claims novelty for the position and form of this recess. According to the specifications, the location of this recess is such that the inside portion fits the sesamoid bone and the first metatarsal joint of the foot, while the outside portion fits the fifth metatarsal joint. "This construction provides a transverse arch of proper length and which supports the anterior arch of the foot." It is claimed by the defendant that, if the last is constructed according to specifications, the recess will be located further forward on the bottom of the last than is shown on the last provided by plaintiff as a specimen of the patented article. The language of the specifications might support this contention. The drawings, however, show the recess at the same place as shown on the plaintiff's last in evidence. I am unable to find any serious departure in this respect in the commercial last from the specifications upon which the patent is based.

(8) As to the outer arch, the drawings and the last made under the patent show a slight bulging along the outer edge in front of the heel portion. The claim is made for an outside drop shank and cuboid extension so constructed as to result in the supporting of the outer longitudinal arch of the foot by the shoe. No instructions are forthcoming from the specifications to indicate how the shank and cuboid extension is to be constructed. This part of the claim would seem to

relate to functions, or results, rather than to means whereby such results may be attained.

(9) The plaintiff had been successful in the trade with shoes manufactured upon his patented last, and the evidence warrants the finding of utility as indicated by the generous reception which the shoe had received from the public.

(10) It must be conceded that the claim is for a combination of elements, each of which was old in the art. The high longitudinal arch is shown in the patent to Selz, No. 1,333,737, March 16, 1920, and to Brown, No. 1,237,464, August 21, 1917. The recess to form an arch support is found in Plumer's patent, No. 29,225, July 17, 1860, and in Dunbar's patents, No. 1,121,236, December 15, 1914, and No. 1,174,133, March 7, 1916. Brown's patent also shows the recess in combination with this inner arch, as also does the patent to Gallagher, No. 1,141,326, June 1, 1915. Plumer and Gallagher were cited by the examiner in rejecting claims first submitted by plaintiff in his application.

(11) It is admitted that the defendant is using in its business of shoe manufacturing a last which plaintiff claims is an infringing article. Its general contour is similar to the patented last. It embodies the inner arch and the recess. It does not show on the outer arch any bulging to correspond with that on plaintiff's last. There is little or no difference with respect to the form and position of the recess between defendant's and plaintiff's lasts, but the former would not strictly conform to the specifications of plaintiff's patent, since the recess is clearly positioned where, according to experts, it should be, so as to form a transverse arch back of the metatarsal joints. The more important difference between the two lasts lies in the fact that in defendant's last the rounded portion on the inner side of the last does not extend to the rear of the heel. The heel of defendant's last is nearly level, only a slight convexity showing. The inner side of the heel toward the front of it is only slightly lower than the outer side, while in plaintiff's last the slope is quite marked. The result of this departure from the plaintiff's last is to avoid all necessity for a wedge in the heel, and the shoe made on defendant's last does not have an unusually cupped heel seat "where the oscalcis fits in."

(12) The defendant has established by clear and convincing evidence, supported by book entries made in the regular course of its business, that in 1906, in 1917, and again in 1920, it was manufacturing shoes on lasts which in no detail differed from the last alleged to infringe. I refer to the so-called Colgate and Lambert lasts. They embodied the same combination of elements which functioned in the same way, achieving the same results.

(13) The use of the lasts which the defendant has employed in its business of manufacturing shoes since 1906 was not a secret use. While the lasts were used only in defendant's factory, any employee was free to use them as occasion required without any injunction against revealing the details or purposes of the last. The use had passed beyond the experimental stage. The lasts had constituted a part of the regular equipment of the factory for several years prior to plaintiff's application.

### Conclusions of Law.

The defendant attacks the validity of the patent on the ground (1) that the claim of the patent is for an aggregation of old elements; (2) that its conception did not involve exercise of inventive faculties; (3) that it lacked novelty; (4) that it was anticipated by lasts which had been in public use more than two years prior to date of application.

While some of the questions raised by these defenses are not wholly free from doubt, I am disposed to resolve the doubt in favor of the plaintiff. As a patentee, he is entitled to a presumption of validity, which is to some extent, at least, strengthened by the fact that some of the prior patents cited by the defendant were considered by the patent examiner, Diamond Rubber Company v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Trico Products Co. v. Apco-Mossberg Corp. (C. C. A.) 45 F. (2d) 594, as well as by the utility of the invention, as indicated by public acceptance, Temco Electric Motor Co. v. Apco Mfg. Co., 275 U. S. 319, 48 S. Ct. 170, 72 L. Ed. 298; Trico Products Corp. v. Rico Mfg. Co. (D. C.) 45 F.(2d) 599; Trico Products Co. v. Apco-Mossberg Corp., supra; Gotham Silk Hosiery Co., Inc., v. Artcraft Silk Hosiery Mills, Inc. (D. C.) 1 F. Supp. 643.

The plaintiff entered a field where any advance, although slight, in the method of making shoes to meet abnormalities or deformities of the human foot, might well be regarded by orthopedic surgeons as a real contribution to the art, and such advance would necessarily involve something more than mere mechanical skill. The improvement in plaintiff's last over those theretofore known or

used lay in the extension of the rounded portion of the inner arch to the rear of the heel portion, in combination with a recess, thereby giving a shoe with a greater cupped heel seat and a heel that necessitates the use of a wedge properly positioned. This was the feature of his last for which a claim of novelty was urged upon the patent officials.

As to the question of anticipation, I have found that the defendant's last, which plaintiff claims is an infringement of his patent, differs in no respect from several of those which the defendant had openly used between 1906 and 1923. There is a statement appearing in the decisions that "that which infringes, if later, would anticipate, if earlier." See Shevenell v. Geo. J. Kelly, Inc. (D. C.) 19 F.(2d) 791. But Walker, in his work on patents, points out that this "epigrammatic formula" may be too broad, depending on whether the patent relied upon is a primary or secondary patent. He states that, "If the competing contrivance turns out to be earlier, it may have no effect upon his patent, except to relegate it to the secondary position in the art, and thus to limit its claim so narrowly that the competing contrivance does not infringe it." Walker on Patents (5th Ed.) pages 77, 78, § 62. This rule is the one to be applied in the case at bar.

Prior patents and prior devices actually in use conspire to limit plaintiff's patent to an extremely narrow compass, and clearly relegate plaintiff's patent to a "secondary position" in the field of shoe manufacturing.

The basic idea of supporting the transverse or metatarsal arches by employing lasts with a depression in the bottom has been known since 1860. The combination of the recess with an accentuated inner arch was also old. Whatever of novelty is to be discovered in plaintiff's invention resides in the specific type of inner arch in combination with a recess and an outward bulging along the outer edge of the last. The plaintiff's claim thus narrowly construed is not infringed by defendant's last. Defendant's last does not embody the particular types of inner arch formed by extending the rounded portion of the bottom of the last to the rear of the heel, nor does it show the outward bulging.

I conclude, therefore, that the patent to plaintiff is valid, but that he is not entitled to the relief prayed for, since he has not established an infringement of the claims of the patent when properly limited.

A decree dismissing the bill may be entered.