### HAZELTINE RESEARCH, Inc. v. ADMIRAL CORPORATION.

Civ. A. No. 48C731.

United States District Court
N. D. Illinois, E. D.

Sept. 22, 1949.

M. Hudson Rathburn, Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., Laurence B. Dodds, New York City, New York, for plaintiff.

Darby & Darby, New York City, Pope & Ballard, Chicago, Ill., for defendant.

IGOE, District Judge.

### Findings of Fact

1. This is a suit for infringement of claims 1, 2 and 4 of patent 2,208,374, Lewis, assigned to Plaintiff, Hazeltine Research,

Inc., a company engaged in research and development in the radio and television field, against Admiral Corporation, a manufacturer of radio and television receivers. The patent in suit is directed to a portion of a broadcast television receiver circuit.

2. Among the problems encountered in broadcasting and reception of television signals are two with which the patent in suit is concerned:

(a) Maintaining the analysis of the image at the transmitter and the synthesis at the receiver in synchronism, that is, in step or in gear. In commercial television broadcasting, as represented schematically in Exh. 4, the analysis of the image at the transmitter and the correlative synthesis at the receiver are effected by cathode-ray tubes. Such a tube develops an extremely fine pencil or beam of electrons, known as a cathode ray, which is deflected back and forth across the face of the tube, a process called "scanning". The scanning at the transmitter and at the receiver must be maintained in synchronism so that, at every instant, the cathode ray of the picture tube at the receiver is reconstructing the same portion of the transmitted image as is being analyzed at the camera tube at the transmitter. This synchronism is effected by sending out at the end of each scanning line a synchronizing pulse and at the end of each series of lines, constituting what is termed a field, a different type of synchronizing pulse. These pulses are added to the picture signals at the transmitter and must be separated again at the receiver. For convenience, the term "synchronizing signal" is abbreviated as "sync signal" and "synchronizing-signal separation" as "sync separation" and the device for performing this function is abbreviated as "sync separator". Prior to Lewis' invention, apparatus had been devised for effecting such sync separation at a television receiver.

(b) Maintaining the correct relation between the average brightness or background illumination of the image being transmitted and the average brightness of the image being reproduced at the receiver. The background illumination component of a television signal usually varies slowly and, for convenience, is referred to as the direct-current or "d.c." component of the television signal. For technical reasons the d.c. component is usually discarded in the amplification of the television signal at the receiver and it must thereafter be recovered or "restored" to the signal before it is applied to the picture tube. Prior to Lewis' invention, apparatus had been devised for recovering or restoring the d.c. background illumination component of a television signal for application to the picture tube.

3. The Lewis invention comprises a novel and extremely simple apparatus or circuit for simultaneously performing both of the above-described functions, namely, sync signal separation and d.c. restoration.

4. The Lewis invention is sufficiently described in patent 2,208,374 in suit, and is particularly described with reference to Figs. 1 and 2 of the drawings at page 1, col. 1, lines 5–50; page 2, col. 1, line 30 to page 2, col. 2, line 43; and page 2, col. 2, line 71 to page 3, col. 2, line 27.

5. On August 28, 1937, Lewis filed his patent application Serial No. 161,424 which contained a complete disclosure of the invention illustrated, described and claimed in patent 2,208,374 issuing thereon.

6. In brief, the Lewis invention described and claimed in patent 2,208,374 comprises a combined sync signal separator and d.c. restorer for a television receiver including the following essential elements, the appended references being to the patent drawing:

(a) A signal-translating stage, such as a cathode-ray signal-reproducing or picture tube (cathode-ray tube 17).

(b) A diode (two-electrode) rectifier coupled directly to the input circuit of the stage, i. e., the input circuit of the picture tube, for deriving from an applied video signal a bias voltage proportional to the peak value of the signal (diode rectifier 36 and associated load resister 29 across which the specified bias voltage is developed).

(c) A source of constant bias voltage (battery 39 or equivalent).

(d) A background-illumination control circuit connected to respond jointly to the bias voltage derived from the rectifier and the constant bias voltage (the circuit specified may be traced from the grid 21 of picture tube 17, through resister 29 and battery 39 to ground, and thence from ground to the cathode 20 of the picture tube and the cathode-grid space of that tube).

(e) Impedance means, such as a resistor, connected in circuit with the rectifier for deriving from the applied signal pulses corresponding to the synchronizing pulses (resistor 37 interposed between the anode of the diode rectifier 36 and ground and across which sync pulses are developed).

(f) A scanning synchronizing circuit connected to utilize the synchronizing signals derived by the impedance means (the circuit leading from the top of resistor 37 through condenser 41 to the vacuum tube 40 which amplifies the separated sync signals).

7. The Lewis invention as described has gone into widespread commercial use, having been embodied in approximately 36% of the postwar models of television receivers including the Hazeltine-licensed RCA Model 630 TS receiver.

8. The specification and claims of the Lewis patent fully comply with the provisions of the Patent Statutes and particularly with the statutory requirements of clarity and completeness of disclosure and definiteness of claiming; specifically, claim 2 is not indefinite in its reference to a large capacitance element and a high resistance element since both of these elements were conventional and their selection was well within the skill of a competent engineer.

9. Defendant, at the trial, relied upon three United States patents (together with their corresponding foreign patents containing the same disclosures but having earlier dates of publication) and one British patent. These patents fail to anticipate the Lewis invention for the following reasons:

(a) *Patent 2,136,810—Vance* (considered by the Patent Office). The circuit of this patent is a very complex one including a tetrode (i. e. a four-electrode) tube R57 having associated circuit elements for developing a d.c. restoring bias and separated sync signals at different portions of its circuit and an additional triode (i. e. a three-electrode) non-amplifying tube R2A3 which serves only to reverse the polarity of the video signal applied to the picture tube and is thus effectively wasted since it performs no amplification. This complex circuit including two separate tubes, a triode and tetrode, and a great many circuit elements accomplishes generally the same purpose as the Lewis single diode (i. e. two-electrode) tube, which is really only one-half of a tube envelope as embodied in the Admiral receiver, and very few circuit elements.

The following features of the Lewis claims are not found in the Vance disclosure:

(1) A diode (two-electrode) sync separator and d.c. restorer. The Vance circuit requires both tetrode (four-electrode) and triode (three-electrode) vacuum tubes and a complex circuit for accomplishing a purpose similar to Lewis.

(2) A connection of the diode rectifier *directly* to the input circuit of the picture tube so that the value of the d.c. restoring bias is at all times inherently of the proper value to effect correct d.c. restoration. In Vance it is necessary to interpose a non-amplifying polarity-reversing tube R2A3 *between* the input circuit of the d.c. restoring tube R57 and the picture tube, which not only increases the complexity of the circuit but requires continuous and critical adjustment; that is, the input circuit of the Vance d.c. restoring tube R57 is connected to the input circuit of the picture tube *indirectly* through the polarity-reversing tube R2A3.

(b) *Patent 2,151,149—Poch* (corresponds to Australian patent 100,910). This patent describes a sync separator circuit comprising a diode rectifier tube 18 having a series resistor R2 which performs generally the sync separating function of Lewis' diode rectifier 36 and series resistor 37 but which differs from Lewis in several important respects. Defendant's expert admitted that the following three elements of the Lewis

claims were not disclosed in the Poch patents:

(1) A source of bias voltage associated with the sync separator diode *in addition* to the bias voltage developed by the diode.

(2) A signal-reproducing device (picture tube) with input electrodes coupled directly to the diode load resistor.

(3) Means for utilizing the bias voltage developed by the rectifier for restoring the d.c. components (background illumination) of the video signal.

While the Poch patent was not considered by the Patent Office, its disclosure, so far as material here, is similar to that of British patent 453,463 which *was* considered by the Patent Office.

(c) *Patent 2,252,746—Willans* (corresponds to British patent 422,906 considered by the Patent Office). Figure 10 of this patent was the only one discussed as allegedly pertinent to the Lewis invention. That figure discloses a diode d.c. restorer circuit quite similar to that of the Lewis patent, but it does not disclose any apparatus for obtaining sync separation. The Willans patent was considered by Defendant's expert to have the disclosure closest to that of the Lewis patent.

(d) *British patent 453,463—Loewe* (considered by the Patent Office). While this British patent was included by Defendant among the prior art on which it relied, it was not discussed at the trial and does not appear to be pertinent.

(e) At the trial, Defendant's expert suggested that one skilled in the art, by selecting certain circuit elements of the sync separator of the Poch patent and connecting them to selected points of the d.c. restorer of the Willans patent, and further by providing an appropriate circuit for taking off synchronizing pulses, could thereby construct a hypothetical circuit equivalent of Lewis. This suggestion is not convincing for two reasons:

(1) There is no teaching or suggestion in either of the Poch and Willans patents of the desirability of such a reconstruction or of how it could be done. Willans was one of the foremost engineers in the television art working in the laboratories of the great Electrical and Musical Industries, Ltd. in England. And yet, in order to get sync separation, Willans did not go to the extremely simple circuit of Lewis but, on the contrary, devised a separate and relatively more complex sync separating circuit shown in Fig. 9 of the patent.

(2) Defendant's expert testified on this point only from after-acquired knowledge, including the teaching of the Lewis patent. He admitted that prior to the date of the Lewis invention he had never designed a television receiver nor done any work on television sync separators or d.c. restorers and that, as of that time, there was no commercial television; it was all in the laboratories. Such hindsight opinion as to what reconstruction of the Poch and Willans circuits would be made by television engineers working in the laboratories in the infancy of the television art is valueless. These patents thus fail to teach or suggest the Lewis invention.

10. The Lewis combined sync separator and d.c. restorer represents a real contribution to the television art which has met with substantial commercial success; it does not represent a mere obvious improvement of prior art devices such as could have been expected of one skilled in the art as it existed in 1937 when the Lewis invention was made.

11. Defendant previously manufactured and sold radio and television receivers under license from Plaintiff but that license expired June 30, 1947, and was not renewed.

12. Since June 30, 1947, and prior to the filing of the complaint herein, Defendant has been manufacturing and selling television receivers, including those identified as its Models 30A14, 30A15, 30A16, 8C11, 8C12 and 8C13, within the Northern District of Illinois.

13. Each of Defendant's Models 30A14, 30A15, 30A16, 8C11, 8C12 and 8C13 television receivers includes a combined sync separator and d.c. restorer circuit which, in all material respects, is substantially identical to that described and claimed in the Lewis patent, as shown by Exh. 11; which operates on the same principles and produces the same results as that described and claim-

ed in the Lewis patent; and which is an exact copy of the corresponding portion of the Hazeltine-licensed RCA 630 TS television receiver.

14. Such differences as exist between the combined sync separtator and d. c. restorer circuit of each of Defendant's Models 30A14, 30A15, 30A16, 8C11, 8C12 and 8C13 television receivers and that of Lewis are trivial; that is, they do not effect the operation of the circuit as a sync separator and d. c. restorer or they represent features not associated with the sync separating and d. c. restoring functions of the circuit.

15. Defendant contends that it escapes infringement by the addition of a resistor in the connection between the d. c. restorer diode and the picture tube grid, but this defense fails because the evidence shows that the presence or absence of this resistor is immaterial to the action of the circuit as a sync separator and d. c. restorer and that its presence does not preclude a direct coupling.

16. Defendant further contends that it escapes infringement because its diode eliminates only 95% of the undesired video signal from the separated sync pulses applied to the synchronizing system of the receiver. However, this defense fails because (1) the Lewis patent neither teaches, requires nor claims theoretically complete and perfect separation of the unwanted video signals from the unwanted sync signals but only a practical separation, and 95% separation is a practical degree of separation; and (2) the synchronizing circuit of each of Defendant's receivers is of a type which responds only to the maximum values of the sync pulses, so that it would not respond to the small amount of the video signal which may leak through the diode sync separator and which appears in the synchronizing circuit with an amplitude of the order of 10% of the sync pulses.

17. Defendant further asserts that it avoids infringement because each of its receivers requires sync separating means in addition to its diode sync separator. The evidence does not support this assertion. Defendant's evidence on this point consists in (1) a photograph of a distorted television picture (Exh. E), but it is not shown that the distortion in that picture is due to the failure of the diode adequately to eliminate video components from the separated sync pulses; and (2) an assertion by Defendant's Chief Engineer that he had unsuccessfully attempted to complete a television receiver without sync separating means in addition to the diode sync separator, but it is not shown that that failure was due to the presence of an excess amount of video signal rather than to an inadequate amplification of the sync signal. It further appears from Defendant's Exh. A, "Practical Television by RCA", a bulletin prepared by RCA to provide its licensee manufacturers with practical design circuits, that a recommended circuit comprised a single diode sync separator followed by a sync amplifier corresponding to the sync amplifier 40 of the Lewis patent. That circuit recommended by RCA is essentially similar to that of the Lewis patent and to that of the Admiral receivers and is a practical sync separating circuit.

18. Admiral further asserts that it avoids infringement because each of its receivers includes separate paths for conducting the video signal to the picture tube and to the diode sync separator and d.c. restorer. However, this difference represents an improvement following the Lewis invention and is described and claimed in patent 2,240,281 to Ballard, owned by RCA under whose patents Defendant is licensed. This difference does not affect, and therefore is not revelant to, the diode sync separator and d.c. restorer in issue and does not avoid infringement.

19. Each of claims 1, 2 and 4 of the Lewis patent in suit reads in terms, element for element, on the sync separator and d.c. restorer circuit of each of Defendant's Models 30A14, 30A15, 30A16, 8C11, 8C12 and 8C13 television receivers.

20. Defendant alleges Plaintiff should be denied recovery because of alleged misuse of its patents. This allegation arises out of a printed form of non-exclusive license agreement which Plaintiff has granted to a large number of radio manufacturers.

That license agreement includes two provisions of which Defendant complains:

(1) It provides that the licensee apply to the licensed apparatus the following license notice:

"Licensed by Hazeltine Research, Inc., only for use in homes, for educational purposes, and for private, non-commercial use, under one or more of the following patents and under pending applications:"

This type of license notice was expressly approved by the Supreme Court in the case of General Talking Pictures Corp. v. Western Electric Co. et al., 304 U.S. 175, 546, 58 S.Ct. 849, 852, 82 L.Ed. 1273. In that case the Court described the license notice which it specifically approved as " * * * stating in substance that the apparatus was licensed only for radio amateur, experimental and broadcast reception under the patents in question. * * *" The similarity between the two license notices is marked.

(2) It provides that, as a consideration for the privilege of using in its receivers the inventions of any desired number which the licensee may elect of Plaintiff's several hundred patents in the radio and television field, the licensee pay to plaintiff a nominal royalty of something less than one per cent. (1%) on all radio and television receivers which the licensee manufactures and sells. This type of royalty computation has been repeatedly approved by an unbroken line of authorities.

21. The evidence fails to sustain any defense of fact or law pleaded by Defendant.

### Conclusions of Law

■ 1. This is an action arising under the Laws of the United States and this Court has jurisdiction of the subject matter and the parties involved 28 U.S.C.A. § 1338.

2. Plaintiff, Hazeltine Research, Inc., is the owner of the entire legal and equitable title and interest in and to Lewis patent 2,208,374 in suit.

■ 3. Lewis patent 2,208,374 was duly and legally issued pursuant to the Patent Laws of the United States and complies with the statutory provisions, including the requirements as to clarity and completeness of disclosure and definiteness of claiming.

■ 4. The usual presumption of validity arising from the granting of the patent in suit is strengthened in this case by the fact that patents representative of the closest prior art were considered by the Patent Office in the examination of the application on which the Lewis patent in suit issued. Diamond Rubber Company of New York v. Consolidated Rubber Tire Company, 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Trico Products Corporation v. Apco-Mossberg Corporation, 1 Cir., 1930, 45 F. 2d 594, 598; W. A. Shaeffer Pen Co. v. Worth Featherweight Pen Co., D.C.S.D.N. Y.1930, 41 F.2d 820, 822; Gotham Silk Hosiery Company, Inc., v. Artcraft Silk Hosiery Mills, Inc., D.C.Del.1932, 1 F.Supp. 643, 644; Saklad v. Hurley Shoe Company, D.C.Mass.1933, 3 F.Supp. 904, 906; Modern Products Supply Co. v. Drachenberg, 6 Cir., 1946, 152 F.2d 203, certiorari denied 327 U.S. 806, 66 S.Ct. 964, 90 L.Ed. 1030; Braswell v. Joseph Shaw Co., D.C.N.D. Ohio 1948, 78 F.Supp. 363.

■ 5. The presumption of validity in this case is also strengthened by the fact that the application on which the patent in suit issued was very thoroughly examined and re-examined by the Patent Office Examiner and was vigorously contested by the Examiner and applicant's attorney. Condenser Corp. of America v. Micamold Radio Corp., D.C.E.D.N.Y.1944, 54 F.Supp. 327; Celanese Corporation of America v. Essley Shirt Co., 2 Cir., 98 F.2d 895, 896; Shotey v. Apex Broach Company, D.C.E.D. Mich.1949, 83 F.Supp. 807.

■ 6. The presumption of validity in this case is further strengthened by the widespread commercial adoption of the Lewis combined sync separator and d.c. restorer by the television industry, as exemplified in the RCA Model 630 TS television receiver licensed by Plaintiff and widely copied by Defendant and others. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Wahl Clipper Corporation v. Andis Clipper Co., 7 Cir., 1933, 66 F.2d 162.

7. The presumption of validity in this case is further strengthened by the fact that Defendant has copied Plaintiff's patented circuit rather than the circuits of the prior art. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 440, 441, 31 S.Ct. 444, 55 L.Ed. 527; Farmers' Handy Wagon Co. v. Beaver Silo & Box Mfg. Co., 7 Cir., 236 F. 731, 738; Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 98 F.2d 999; Knight-Morley Corp. v. Ajax Mfg. Corp., D.C.E.D.Mich, 84 F. Supp. 215.

8. The Lewis patent 2,208,374 is good and valid in law as to each of claims 1, 2 and 4 thereof; the subject matter of each of said claims is of an inventive and patentable character and is not anticipated by the prior art.

9. In view of the fact that each of Defendant's Models 30A14, 30A15, 30A16, 8C11, 8C12 and 8C13 television receivers includes a combined sync separator and d.c. restorer which is essentially the same as that described in Lewis patent 2,208,374 and claimed in claims 1, 2 and 4 thereof and which operates on the same principles and produces the same results as that described and claimed in Lewis patent 2,208,-374, each of such television receivers is an infringement of the Lewis patent in suit. Sanitary Refrigerator Co. v. Winters et al., 1929, 280 U.S. 30, 41, 50 S.Ct. 9, 74 L.Ed 147.

10. Each of claims 1, 2 and 4 of Lewis patent 2,208,374 is infringed by each of Models 30A14, 30A15, 30A16, 8C11, 8C12 and 8C13 television receivers manufactured and sold by Defendant.

11. The license notice included in Plaintiff's printed form of license agreement does not constitute a misuse of its patents. General Talking Pictures Corp. v. Western Electric Co., 305 U.S. 124, 59 S. Ct. 116, 83 L.Ed. 81; Hazeltine Research, Inc., v. Automatic Radio Mfg. Co., D.C., 77 F.Supp. 493.

12. The provision included in Plaintiff's printed form of license agreement requiring the licensee to compute royalties on the basis of its gross sales of radio and television receivers, in consideration for the privilege granted to licensee of using the inventions of any desired number of Plaintiff's large group of patents, does not constitute a misuse of its patents. Hazeltine Research, Inc., v. Automatic Radio Mfg. Co., supra; Hazeltine Research, Inc. v. De Wald Radio Mfg. Corp., 194 Misc. 81, 84 N.Y.S.2d 597; H-P-M Development Corp. v. Watson-Stillman Co., D. C., 71 F.Supp. 906; Pyrene Mfg. Co. v. Urquhart, D.C., 69 F.Supp. 555; American Optical Co. v. New Jersey Optical Co., D.C., 58 F.Supp. 601, 606; International Carbonic Engineering Co. v. Natural Carbonic Products, Inc., D.C., 57 F.Supp. 248; Ohio Citizens Trust Co. v. Air-Way Electric Appliance Corp., D.C., 56 F.Supp. 1010, 1012.

13. Plaintiff does not come into Court with unclean hands as alleged by Defendant and is not barred from relief thereby.

14. Plaintiff is entitled to a permanent injunction against further infringement by Defendant and all those controlled by it and in privity with it.

15. Plaintiff is entitled to an accounting for damages suffered by it by virtue of said infringement of defendant.

16. Plaintiff is entitled to its costs and disbursements in this action.