**Harold M. LEWIS, Plaintiff-Appellee,**

v.

**AVCO MANUFACTURING CORPORATION and The Harry Alter Co., Inc., Defendants-Appellants.**

No. 11442.

United States Court of Appeals Seventh Circuit.

Jan. 13, 1956.

Francis J. Naphin, Chicago, Ill., Floyd H. Crews, New York City, Alden D. Redfield, Cincinnati, Ohio, Morris Relson, New York City, Charles M. Hogan, Cincinnati, Ohio, Grealis & Naphin, Warren G. Sullivan, Don A. Banta, Chicago, Ill., Darby & Darby, New York City, of counsel, for appellants.

Laurence B. Dodds, Little Neck, N. Y., M. Hudson Rathburn, Chicago, Ill., Philip F. LaFollette, Leonard A. Watson, New York City, Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., of counsel, for appellee.

Before MAJOR, FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Circuit Judge.

This is an action for infringement of claims 1, 2 and 4 of Lewis Patent No. 2,-208,374 issued July 16, 1940, on an application filed August 28, 1937. The patent is entitled "Television Receiving System," but the invention relied upon is directed only to a small portion of a television broadcast receiver. The accused structure, a Crosley home television receiver, Model No. 11-445 MU, incorporating Chassis No. 321-2, is manufactured by the defendant Avco Manufacturing Corporation (hereinafter referred to as Avco) and sold by defendant Harry Alter Company, Inc., a Chicago distributor for Avco. Defendants by answer interposed the defenses of invalidity over the prior art and non-infringement predicated largely on the doctrine of file wrapper estoppel. In addition, it was asserted that the patent was non-enforceable because (a) the Lewis patent was tainted with champerty and (b) the patent had been used for block-booking.

Defendants, in connection with their answer, counter-claimed for (1) a declaratory judgment of invalidity, non-infringement and non-enforceability of the patent, and (2) an injunction and damages for violation of the anti-trust laws. The issues thus raised by the counterclaim were the same as those asserted as a defense and require no separate consideration. The District Court decided all issues adverse to the defendants, and after making its findings of fact and entering its conclusions of law, on December 22, 1954, entered an interlocutory judgment for the plaintiff, by which defendants were enjoined from further infringement and required to account for damages, dismissed defendants' counterclaim and awarded costs and disbursements to plaintiff. From this judgment defendants appeal. The contested issues presented and argued here are the same as those raised by the pleadings in the District Court.

In the beginning, we think it important to note that the same claims of the same patent have previously been litigated in the same District Court and their validity sustained. Hazeltine Research, Inc., v. Admiral Corp., 87 F.Supp. 72. This court, on appeal, affirmed. Hazeltine Research, Inc., v. Admiral Corp., 183 F.2d 953 (subsequently referred to as Admiral). In that case Hazeltine Research, Inc. maintained the action as assignee of Lewis and it was Admiral which was held to have infringed. Subsequent to that decision, Hazeltine assigned the patent to Harold M. Lewis, the patentee and plaintiff in the instant action. As noted, both the Admiral case and the instant case were tried in the same District Court, but by different Judges. Admiral was heard and decided by Judge Igoe and the instant case was heard and decided by Judge Knoch.

The state of the art at the time of the allowance of the patent in suit, as well as the purpose and object of the Lewis invention, was stated and discussed in Admiral and no good purpose could be served in repetition. No distinction was drawn in Admiral between claims 1, 2 and 4 in suit, and no distinction is made here. In Admiral, 183 F.2d page 958, we set forth claim 1, which we need not repeat. Neither shall we retread the ground which we covered in Admiral relative to the applicability of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. to the findings of the District Court in patent litigation with the corollary that such findings must be accepted by a reviewing court unless it can be said that they are "clearly erroneous."

The issue of validity requires no extended discussion. In Admiral, Vance No. 2,136,810, Willans No. 2,252,746, and Poch No. 2,151,149, all cited against Lewis in the Patent Office, were relied upon by Admiral as disclosing a lack of invention by Lewis. Judge Igoe held contrary to Admiral's contention on the issue of validity and was affirmed by this court. In the instant case defendants rely upon the same prior art patents to invalidate, and, in addition, Guanella No. 2,225,741, which was not cited in the Patent Office and was not relied upon by Admiral. While it was asserted in Admiral that Vance was the most pertinent

prior art, that distinction is now claimed for Guanella. Judge Knoch made detailed findings as to the disclosures of each of these prior art patents and rejected each as disclosing the invention of Lewis. His findings are substantially the same as those made by Judge Igoe relative to the prior art patents relied upon by Admiral. In addition, his finding as to Guanella, not relied upon in Admiral, sets forth a detailed description of that patent, and concludes:

> "The Guanella disclosure lacks a number of essential features of the Lewis invention and contains no disclosure which, as of 1937, would have taught or suggested a combined sync-separating and d.c. restoring circuit of the type described and claimed in the Lewis patent and for the purpose disclosed in the Lewis patent."

We think that this finding by Judge Knoch, as well as his other findings concerning the prior art patents relied upon, is substantially supported by the record.

We have a situation where the claims in suit have been found valid by Judge Igoe in Admiral, affirmed by this court, and found valid by Judge Knoch in the instant case. We discerned no reason to disturb the findings of Judge Igoe in Admiral on the issue of validity, and likewise we discern no reason to disturb those of Judge Knoch on the same issue of the instant case. The judgment on the issue of validity is affirmed.

We now come to the more serious issue of infringement. As we understand defendants' position, it is not seriously disputed but that the accused structure infringes under the doctrine of equivalents, as that doctrine is defined in Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, except for the contention that plaintiff is estopped to assert infringement in view of the proceedings in the Patent Office by which the claims were allowed. It is on this contention of file wrapper estoppel that a difficult problem is presented. As this

court remarked in Admiral, 183 F.2d at page 958, "It is true that Lewis travelled a rugged road in the prosecution of his application, as is evidenced by the numerous times his proposed claims were rejected by the Examiner over the prior art". It was not until a final amendment, made October 10, 1939, that his claims were allowed. In Admiral, at page 958, as already noted, we set forth claim 1, with the amendment of October 10, 1939 in italics, which amendment resulted in the allowance of the claims. The amendment provided for a "signal-translating stage having an input circuit to which said signal is applied," and a diode rectifier "coupled directly to said input circuit". Referring to this amendment, we stated in Admiral, at page 958, "In other words, the direct coupling between the diode rectifier and the picture tube as called for by the amendment is the essence of the invention."

No criticism is made in the instant case of what we stated in Admiral relative to the amendment which resulted in the allowance of the patent. Plaintiff in his brief enumerates seven elements found in the claims, and opposite each sets forth what he conceives to be the corresponding element in defendants' structure. Defendants in their reply brief take no issue with the identity of these elements other than as to element 4. This element is defined, "a diode rectifier coupled directly to said input circuit for deriving from said signal a bias voltage proportional to said peak value of said signal." The corresponding element in defendants' structure is defined, "The rectifier 36, while of triode construction, has diode action and is coupled directly to the signal-input circuit of the picture tube through capacitor 121 and derives from the applied television signal and develops across resistance 29 (specifically the part R130) a voltage proportional to the peak value of the applied television signal." Defendants assert that plaintiff in thus describing this element "recognizes two vital actual differences * * * : that Avco has a 'triode construction', and that Avco's triode is

'coupled directly' 'through capacitor 121', 'which is impossible."

The only findings made by Judge Knoch relative to infringement are numbered 12 to 16, inclusive. They are as follows:

"12. Defendants' Model 11–445MU television receivers include a combined sync-separator and d.c. restorer circuit which, in all material respects, is essentially the same as that described and claimed in the Lewis patent in suit and which operates on the same principles and produces the same results as those described in the Lewis patent in suit.

"13. Such differences as exist between the combined sync-separator and d.c. restorer circuit of Defendants' Model 11–445MU television receivers and that of the Lewis patent in suit represent improvements and refinements which have been developed in the television art since Lewis made his invention in 1937; such differences do not represent any departure from the essential features of the combined sync-separator and d.c. restorer circuit disclosed and claimed in the Lewis patent in suit.

"14. Defendants contend that they escape infringement because the rectifier in their receiver which serves to separate the sync pulses and to develop the d.c. restoring voltage is of triode construction, rather than diode construction, as in the Lewis patent. This defense fails because that rectifier in the Defendants' receiver and its associated circuit elements are proportioned and connected so that it operates with diode action and is the full equivalent of the Lewis rectifier tube which also operates with diode action. The use of a rectifier tube with triode construction and diode action represents an improvement following the Lewis invention in that it provides separated sync pulses of substantially constant amplitude in spite of variations in the strength of the received signal and it also prevents capacitive feedthrough of high-frequency video components into the synchronizing-signal circuits.

"15. Defendants further assert that they avoid infringement because their receiver includes separate paths for conducting the video signal to the picture tube and to the sync-separator and d.c. restorer. However, this difference represents an improvement following the Lewis invention and is described and claimed in Patent 2,240,281 to Ballard, owned by RCA under whose patents Defendant Avco is licensed. This difference does not affect, and therefore is not relevant to, the diode sync-separator and d.c. restorer in issue and does not avoid infringement.

"16. Each of claims 1, 2 and 4 of the Lewis patent in suit reads in terms, element for element, on the sync-separator and d.c. restorer circuit of Defendants' Model 11–445MU television receiver."

It will be noted from a reading of these findings that no mention is made of the proceedings in the Patent Office upon which defendants rely as a basis for file wrapper estoppel. All these findings (other than 16) are material to the charge of infringement only under the doctrine of equivalents. In summary, the findings embrace nothing more than that defendants' structure operates on the same principles and produces the same results as those described by Lewis. At the same time, the findings recognize that defendants' structure represents improvements and refinements developed in the art since the invention of Lewis. There is no finding that a triode is the same or the equivalent of a diode; it is stated that defendants' triode "operates with diode action and is the full equivalent of the Lewis rectifier tube which also operates with diode action."

Finding 16, which states that the patent in suit "reads in terms, element for element," on defendants' structure is, so we think, clearly erroneous. As previously shown, plaintiff's attempt to read

the claim elements upon defendants' structure fails in one important respect in that the claims call for "a diode rectifier," and what is asserted to be the corresponding element in defendants' structure is "a rectifier of triode construction." More than that, plaintiff's great reliance upon the doctrine of equivalents would hardly be necessary if there was record support for finding 16. In this connection it is pertinent to note that Dr. Alan Hazeltine, plaintiff's expert witness, when asked, " * * * do you consider the tube 36 as connected and operated in the Avco receiver circuit as a triode or a diode?" responded, "I consider that tube as a triode in structure, but in operation the action is essentially that of a diode." Referring to that answer, plaintiff's counsel stated to the court, "Your Honor, I think that last question and answer is directed to what is perhaps the single most critical issue in this case."

While, as shown, the court made no findings relative to the proceedings in the Patent Office upon which file wrapper estoppel is asserted, it did enter a conclusion of law, as follows:

"8. Plaintiff is not estopped, by reason of any of the proceedings in the Patent Office on his Patent 2,-208,374, from asserting infringement of the claims in suit by Defendants' Model 11–445MU television receiver."

It appears that Judge Knoch, having found infringement under the doctrine of equivalents, paid little heed to the defense of file wrapper estoppel, and that is understandable assuming that plaintiff made the same argument before that court as he makes here. Plaintiff here asserts over and over that defendants' receivers embody the essential physical elements of the Lewis circuit, and that they operate in the same manner to achieve the same results, and as a consequence defendants' structure infringes under the doctrine of equivalents. Numerous cases are cited in support of this thesis, the most important of which is Graver Tank & Mfg. Co., Inc., v. Linde

Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, where the doctrine was forcibly enunciated and applied. Plaintiff also cites Graver in support of his argument that a patentee is allowed reasonable latitude in the selection of its terminology, and that infringement is a question of substance, not terminology.

■ As previously noted, we get from defendants' brief the definite idea that they do not dispute infringement under the doctrine of equivalents in the absence of file wrapper estoppel. At the same time, we note that plaintiff makes little effort to answer defendants' argument on the defense of file wrapper estoppel but hammers away on the theory that there is infringement under the doctrine of equivalents. In our view, this is a fallacious approach to the problem. It is akin to placing the cart before the horse. The doctrine of file wrapper estoppel, when applicable, supersedes that of equivalents. Its existence, rightly or wrongly, protects an accused who otherwise might be guilty of infringement.

Inasmuch as the view which we have just expressed is important and perhaps vital to the infringement issue, we think it worth while to cite and discuss some cases in support thereof.

Perhaps the most striking illustration of this principle is shown in Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736. This court, in Union Carbide & Carbon Corp. v. Graver Tank & Mfg. Co., Inc., 7 Cir., 196 F.2d 103, discussed the holding in Ace, which we think is worth repeating. We stated, 196 F.2d at page 107:

"There, the court had before it a patent on a gaming device commonly referred to as a pin ball game. This court, 7 Cir., 119 F.2d 349, had held the patent valid and infringed. The claim called for a certain conductor means 'imbedded in' the table. Previously a claim which required that the conductor means be 'carried by' the table had been disallowed in the Patent Office. The Supreme Court, as in its second deci-

924

sion in the instant litigation, took the case solely on the issue of infringement, found non-infringement and reversed this court. In doing so the court stated 315 U.S. at page 136, 62 S.Ct. at page 518: 'Whatever may be the appropriate scope and application of the doctrine of equivalents, where a claim is allowed without a restrictive amendment, it has long been settled that recourse may not be had to that doctrine to recapture claims which the patentee has surrendered by amendment.' The court further stated: 'By the amendment, he recognized and emphasized the difference between the two phrases and proclaimed his abandonment of all that is embraced in that difference. [Citing cases.] The difference which he thus disclaimed must be regarded as material, and since the amendment operates as a disclaimer of that difference it must be strictly construed against him.' "

In Smith v. Magic City Kennel Club, Inc., 282 U.S. 784, 51 S.Ct. 291, 75 L.Ed. 707, the court quoted from its previous decision in I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 443, 47 S.Ct. 136, 71 L.Ed. 335, as follows, 282 U.S. at page 790, 51 S.Ct. at page 293:

" 'The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers. [Citing cases.] The patentee is thereafter estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto. [Citing case.]' "

The court on the same page, in response to the patentee's resort to the doctrine of equivalents, stated:

"What has already been said disposes of this contention, for where a patentee has narrowed his claim, in order to escape rejection, he may not 'by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments, which amount to disclaimer.' [Citing cases.]"

In Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220, 312 U.S. 654, 61 S.Ct. 235, 239, 85 L.Ed. 132, the court stated:

"It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with reference to claims that have been cancelled or rejected and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent. [Citing cases.] The patentee may not, by resort to the doctrine of equivalents, give to an allowed claim a scope which it might have had without the amendments, the cancellation of which amounts to a disclaimer. [Citing cases.]"

This court in Falkenberg v. Golding, 195 F.2d 482, 485, stated:

"An applicant may not, before the Patent Office, limit the use of the words in his claims narrowly to avoid the prior art and thus obtain allowance and then subsequently urge a broader construction and attribute to his words a meaning which he previously disclaimed in an effort to establish the claim. [Citing cases.]"

This court has often held in effect that the doctrine of file wrapper estoppel, where applicable, supersedes that of equivalents. Richmond Screw Anchor Co. v. Umbach, 7 Cir., 173 F.2d 521, 530; Peters & Russell, Inc. v. Dorfman, 7 Cir., 188 F.2d 711, 715, and Kromer v. Riegel Textile Corp., 7 Cir., 227 F.2d 741.

It is, therefore, plain from these cases that plaintiff's argument in support of infringement by equivalency is of no consequence unless defendants' contention relative to file wrapper estoppel is rejected. In this connection, it may also be noted that cases cited by plaintiff on the general proposition that "the separation of one integral part into two parts, together doing substantially what was done by the single element, does not evade infringement" and that "infringement is a question of substance, not terminology; a patentee is allowed reasonable latitude in the selection of his terminology," while material to the issue of infringement by equivalency, are beside the question on the issue of file wrapper estoppel. Illustrative is Bianchi v. Barili, 9 Cir., 168 F.2d 793, wherein the court at page 801, in construing the claims in suit, stated, "It is also a question of substance, and not of nomenclature. It is not to be settled by striving to ascertain the difference between tweedledum and tweedledee." Whether that graphic and over simplified distinction would have any pertinency in connection with file wrapper estoppel is doubtful. If the difference between tweedledum and tweedledee represented the margin between the prior art and the patent as allowed, the patentee would not be heard to assert that such difference was of no consequence on the issue of infringement.

We have previously referred to our opinion in Admiral for a statement relative to the prior art as well as the purpose and object of the Lewis invention. It perhaps is pertinent, however, to add a statement from plaintiff's brief, wherein it is asserted that the patent in suit "is directed to a simplified apparatus for solving the two problems described above, that is, synchronizing-signal separation and d-c restoration. Lewis did not broadly invent apparatus to solve either of these problems separately. This apparatus had previously been devised separately by others. What Lewis invented was a novel and extremely simple apparatus for *simultaneously performing both* of these functions."

It also is important to note that Lewis in the Patent Office referred to his structure as a "single simple diode." There is no contention that Avco uses a diode—single, simple or otherwise. Instead, it utilizes a triode. As already noted, there is no finding that a triode as a structure is the same or even the equivalent of a diode. The most that can be claimed and all that was found by Judge Knoch is that defendants' triode "operates with diode action." It is on this basis that plaintiff contends that defendants' structure performs the same function in the same manner to accomplish substantially the same result as is achieved by plaintiff's single simple diode. It must not be overlooked, however, that this invention is not upon "action," whether it be diode or triode, and neither is it upon performance, function or result. The invention is upon a structure, that is, a single simple diode, with the specific limitation that such diode be "coupled directly to said input circuit." While there appears to be no question but that a diode and a triode are separate and distinct structures, there is some uncertainty as to the precise distinction, or more aptly stated, some uncertainty as to the function which each normally performs.

Professor Hazeltine, while conceding that Avco employed a triode structure, claimed that in operation its action was essentially that of a diode. At another point he admitted that Avco's triode operates as though it were two separate and independent diodes. He testified as follows:

"Q. Is it your testimony that the Crosley triode operates just as though it were two separate and independent diodes? A. Yes.

"Q. The diode made up of the grid and cathode performing the function of automatic background control and the diode made up of the plate and cathode performing the function of sync separation, is that correct? A. Not wholly.

"Q. What is wrong? A. The latter part is correct about the sync separation, but the two together add

their current, and it is the combined current that gives the DC restoration or automatic background control.

"Q. To which that diode, made up of the plate and cathode, contributes nothing except the constant component, and has nothing to do with automatic background control, is that not correct? A. Yes, sir."

Avco on the issue of file wrapper estoppel contends that Lewis procured the allowance of his claim upon a twofold representation to the Patent Office made in order to escape the prior art: (a) that his structure embodied a single simple diode and (b) that such diode was directly coupled to the input of the circuit. There is no room for dispute, in fact it is conceded, that Avco does not employ a diode, single, simple or otherwise, but there is a marked dispute as to whether its triode, asserted and found to produce diode action, is coupled directly to its input circuit.

The application of Lewis for patent was filed August 28, 1937, consisting of the specifications with four claims, all of which were rejected on certain enumerated prior art patents. In response to this office action, Lewis in an attempt to escape such art among other things argued:

"It is to be noted that in this case applicant is not seeking to claim generically as his invention the background illumination control means, *per se*. Applicant's invention comprises a novel arrangement including a *single* means for *simultaneously deriving* from the composit signal *both* synchronizing impulses *and* the unidirectional-bias voltage representative of background illumination. This means in the embodiment of the invention disclosed in applicant's drawing is the diode 36 and its particular type of load circuit. By virtue of this arrangement an extremely simple, stable, and satisfactory *single device* performs the *two* operations of separating the synchronizing impulses from the composite television signal and simultaneously deriving a unidirectional background illumination bias voltage. Each and every one of applicant's claims definitely sets forth a novel combination which includes this novel single means."

The record contains a "Glossary of Terms," wherein a diode is defined, "A vacuum tube having a cathode and an anode and making use of the fact that current flows between these electrodes when the anode is positive to the cathode and is interrupted when the anode is negative," and a triode, "A vacuum tube having a cathode, an anode and a control grid and commonly used for amplification." Professor Hazeltine, consistent with these definitions, testified that plaintiff's diode consisted of two electrodes, that is, the cathode and the anode, while Avco's triode consisted of three electrodes, that is, the cathode, anode and control grid.

Further referring to the prior art, Lewis stated:

"In no case, however, is there disclosed a *single means* for simultaneously accomplishing these two functions."

Thereupon, applicant filed seven claims which were also rejected over the prior art patents of Vance and Loewe. In such rejection the Examiner stated:

"Tube R57 of Vance performs the double function of separating the synchronizing signal from the picture signal and supplying background signals to the C.R. tube. In Loewe's devices the diode performs the double function of providing background bias for the C.R. tube and separating the synchronizing signal from the picture signal."

Further claims were filed, concerning which applicant stated:

"Each of these claims defines applicant's novel system whereby the two distinct functions of (1) providing a background-illumination control-bias voltage and (2) separating the synchronizing signals from the video-frequency signals are obtained

with a novel, very simple circuit arrangement including a diode rectifier."

And referring to British patent 422,906, another prior art patent, applicant stated:

"Nothing is found in the patent which indicates that the two functions could be effected with a single simple diode rectifier circuit arrangement such as is defined by applicant's claims."

All claims were again rejected, with a statement by the Examiner:

"Vance broadly shows the use of a single tube for performing the double function of separating the synchronizing signal from the picture signal and for re-inserting the background component into the picture signal. * * *

"No invention would be involved in substituting a diode and the necessary circuits for Vance's triode, or in using the current in lead 19 of Loewe 453,463 to control the background instead of the volume of Loewe's signal."

Thereupon, all claims were amended by inserting "coupled directly." In connection with this amendment applicant stated:

"It is a fair statement of applicant's arrangement, therefore, that applicant's diode 36 is the full equivalent of *both of tubes R57 and R2–A3* of the Vance patent. The claims have been limited to be specific to applicant's arrangement in which a diode is connected *directly to the input circuit* of the stage which is to be stabilized."

The patent was allowed with four claims, including those in suit (claims 1, 2 and 4).

While it may be argued, as it is, that the claims were finally allowed because of the amendment which called for "direct coupling," it is also evident that a controlling factor was Lewis' reiterated representation that his arrangement call-

ed for the utilization of a single simple diode in order to distinguish from Vance which the Examiner described as calling for a triode. In fact, Lewis conceded that his diode "is the full equivalent of both of tubes R57 and R2–A3 of the Vance patent." As we understand, this could mean only that Lewis was proposing by his single simple diode to perform the same function previously performed by Vance with his two-tube triode. While it may be a matter of speculation, it would appear unlikely from this history that the claims in suit would have been allowed if they had called for a triode, even with the representation that it had diode action. And it appears even more unlikely that the claims would have been allowed if they had called for a triode operating as two separate and independent diodes. Certainly such a representation would have been inconsistent with the oft repeated claim by Lewis that his structure consisted of a single simple diode. We are satisfied that the invention must be limited to a specific structure, that is, a "single simple diode," as distinguished from any "single means," and particularly that they must be distinguished from a triode even though it produces the same result and "operates with diode action."

■ Under the authorities which we have heretofore cited and discussed, we conclude that the defense of file wrapper estoppel must be sustained. A contrary holding would result in ignoring the representations made to the Patent Office which resulted in the allowance of the claims and give Lewis the benefit of claims which were rejected over the prior art. Repeating the pertinent observation in Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136, 62 S.Ct. 513, 518, 86 L.Ed. 736, made in a similar factual situation:

"By the amendment he [patentee] recognized and emphasized the difference between the two phrases and proclaimed his abandonment of all that is embraced in that difference. [Citing cases.] The difference

which he thus disclaimed must be regarded as material, and since the amendment operates as a disclaimer of that difference it must be strictly construed against him."

We think that the weakness of plaintiff's position in reliance upon equivalency without taking into consideration the file wrapper history is illustrated by the testimony of Professor Hazeltine in distinguishing the two constructions, that is, plaintiff's diode and Avco's triode. The witness was requested to give a "homely analogy" showing the relationship of such constructions. To this request the witness responded,

"An analogy would be just distinguishing between the action of a physical body, and the name of a physical body. If you were to use a crowbar to drive nails, that crowbar is still a crowbar in structure, although the action is the action of a hammer."

We think it would be true that a patent on a device for driving nails, designated as a hammer, would be infringed by a device designated as a crowbar, used for the same purpose and accomplishing the same or a similar result. Under such circumstances, the crowbar would be the equivalent of the hammer. This "homely analogy," however, is not complete as it relates to the instant situation. Suppose that a patent were sought on a crowbar as a device for driving nails and the claims rejected over the prior art which disclosed such a device; the claims then are amended by designating a hammer rather than a crowbar and, as amended, are allowed. Thereafter, the use of the crowbar is charged to infringe. We think it not open to doubt but that the patentee would be estopped to assert infringement, and the fact that the crowbar produced the "action of a hammer" would be immaterial even though it operated in the same manner and produced the same or a similar result.

In Admiral, 183 F.2d 953, we sustained the District Court in its findings and conclusion that file wrapper estoppel was not available to Admiral. We think, however, that the difference between the position of Admiral and that of Avco requires a different result. Admiral's rectifying device was a diode, while Avco employs a triode. Avco's structure is more like Vance of the prior art than like Lewis. Both Judge Igoe in Admiral and Judge Knoch in the instant case, in sustaining the validity of Lewis over Vance, found that Lewis disclosed "a diode sync-separator and d.c. restorer," while the Vance circuit required "both tetrode (four-electrode) and triode (three electrode) vacuum tubes and a complex circuit for accomplishing a purpose similar to that of Lewis." As already shown, plaintiff's expert witness claimed no more than that Avco's triode (three-electrode) produced the action of Lewis' diode (two-electrode), and the same witness suggested that defendants' triode operated as two diodes. Also as previously noted, Judge Knoch in his findings went no further than to assert that Avco's structure "operates with diode action and is the full equivalent of Lewis." Assuming that this finding, absent any other consideration, would sustain infringement on the doctrine of equivalents, it ignores the defense of file wrapper estoppel. After all is said and done, there is no escape from the fact that Lewis procured the allowance of the claims in suit on the representation that his structure consisted of a "single simple diode," made for the purpose of escaping the triode construction of the prior art, particularly Vance. Lewis is now estopped from asserting infringement against a different structure, that is, a triode, even though it does have diode action.

Such being our conclusion, we perceive no reason to discuss other contentions relied upon as a defense. The judgment appealed from is reversed and the cause remanded, with directions to proceed in accordance with this opinion.